# IN THE COURT OF APPEALS OF IOWA

No. 14-0754
Filed July 16, 2014

**IN THE INTEREST OF**
**E.C., A.C. G.N., J.N., and A.N., Minor Children,**

**J.N., Father,**
　　　Appellant,

**B.M., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Jefferson County, William S. Owens, Associate Juvenile Judge.

　　　A mother and father separately appeal the termination of their parental rights. **AFFIRMED.**

　　　William C. Glass, Keosauqua, for appellant-father.

　　　Terri Quartucci of Quartucci Law Office, Fairfield, for appellant-mother.

　　　Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Tim W. Dille, County Attorney, and Patrick J. McAvan, Assistant County Attorney, for appellee.

　　　Ryan J. Mitchell of Orsborn, Bauerly, Milani & Grothe, L.L.P., Ottumwa, for grandparent.

　　　Robert Breckenridge, Ottumwa, attorney and guardian ad litem for minor children.

　　　Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

A mother and father separately appeal the termination of their parental rights. The mother, who was facing multiple felony charges at the time of the hearing, argues she should have been granted additional time to reunify with her five children. She also contends the juvenile court should have declined to terminate her rights based on Iowa Code sections 232.116(2), 232.116(3)(b) and (c) (2013). In the alternative, she asks for her children to be placed in a guardianship. Also in jail at the time of the hearing, the father of the three youngest children argues only that termination of his parental rights was not in the long-term best interests of the children.

In its order terminating parental rights, the juvenile court noted this family's involvement with the Department of Human Services (DHS) spanned nearly a decade, and asked rhetorically: "Just how long should these children be expected to wait for their parents' actions to match their words?" Because these children should not be expected to wait any longer for permanency, we affirm as to both parents.

## I.    Background Facts and Proceedings

J.N. (born 2007), A.N. (born 2009), and G.N. born (2011), are the children of this father and mother. The mother also has two other children, E.C. (born 2001) and A.C. (born 2002), who are involved in this termination proceeding and subsequent appeal.[1]

---

[1] The court also terminated their father's rights, but he is not a party to this appeal. The mother also has an older daughter, who turned eighteen in May 2013, and is not subject to the termination order.

The DHS entered the picture for the two older children in 2005. Since then the juvenile court has repeatedly ordered removal of the children from their mother's care while she dealt with problems of substance abuse and domestic violence. The family's case reopened on March 4, 2013—following reports the mother and the father were using methamphetamine while caring for the children. The father's presence in the home violated a no-contact order. Authorities removed the children from the home the next day. The State filed a petition alleging the children were in need of assistance (CINA) on April 19, 2013.

In October of 2013, the mother was arrested on various criminal charges, including conspiracy to deliver more than five grams of methamphetamine, forgery, third-degree burglary, credit card theft, driving while barred, and failure to appear. On December 24, 2013, the father was arrested on various criminal charges, including possession of methamphetamine. He was arrested again on April 12, 2014, on other charges.

On February 26, 2014, the State filed a petition to terminate their parental rights. Both parents testified at a hearing on April 23, 2014. In an order issued April 29, 2014, the court terminated the rights of the mother under sections 232.116(1)(f) and (h) and the rights of the father under sections 232.116(1)(e) and (h). The mother and father filed separate petitions on appeal.

## II. Standard of Review

We review an order terminating parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Although we give weight to the juvenile court's factual findings, we are not bound by them. *In re K.N.*, 625 N.W.2d 731, 733

(Iowa 2001). Our foremost concern is the best interests of the children. *See P.L.*, 778 N.W.2d at 39 (holding best interests are to be determined within statutory framework and not upon court's own perceptions).

## III. Analysis

Neither the mother nor the father challenges the statutory grounds for termination. Instead, the mother asks for a six-month extension of time to allow the children to be returned to her care. She also argues the factors in sections 232.116(2), 232.116(3)(b), and (c) weigh against termination. As a last resort, she proposes the children be placed in a guardianship under section 232.104(2)(d)(1). The father's entire argument is one sentence: "The termination of parental rights was not in the child[ren]'s best interests where there was no showing regarding the future effects of termination of the parent-child relationship on the children."

### A. Father

We address the father's claim first. The legal argument in his petition on appeal consists of a single issue heading and citation to Iowa Code section 232.116(2) and two cases. He does not indicate how those cases support his position. When asked to describe the findings of fact or conclusions of law with which he disagrees, the father writes: "that termination of parental rights hearing was in the children's best interests."

We recognize termination appeals employ expedited procedures. *See In re J.A.D.-F.*, 776 N.W.2d 879, 883 (Iowa Ct. App. 2009). Iowa Rule of Appellate Procedure 6.201(1)(*d*) says the petition on appeal shall substantially comply with

Form 5 in rule 6.1401. Paragraph 8 of Form 5 requires a petitioner to "State the legal issues presented for appeal, including a statement of how the issues arose and how they were preserved for appeal." Iowa R. App. P. 6.1401—Form 5. The petitioner is also required to state "what findings of fact or conclusions of law the district court made with which you disagree *and why*, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal." *Id.* (Emphasis added.)

The form further provides:

> *The issue statement should be concise in nature setting forth specific legal questions. General conclusions, such as "the trial court's ruling is not supported by law or the facts," are not acceptable. Include supporting legal authority for each issue raised, including authority contrary to appellant's case, if known.*

*Id.* (Emphasis in original.)

No question, the petition on appeal is "a streamlined, fill-in-the-blanks form, designed to be completed in an expeditious manner." *In re L.M.*, 654 N.W.2d 502, 506 (Iowa 2002). But the father's petition on appeal is so minimalist it does not satisfy the expedited rules. He does not indicate why he disagrees with the juvenile court's fact findings or legal conclusions or what part of the record supports his argument. His general conclusion does not properly frame the issue for our review.

If we were to reach the merits of his claim, we would find the juvenile court was correct in deciding termination of the father's rights was in the long-term best interests of G.N., A.N., and J.N. The record reveals these young children are showing the stress of being in and out of parental placements and foster

care. As a six-year-old J.N. worries about balancing his Cub Scout activities with visits with parents and older siblings; he also has been diagnosed with ADHD and takes medication to control his behavior. A.N. often wakes up from nightmares, is overly affectionate with strangers, and angers easily. The youngest child, G.N., also has angry outbursts. Continuing their uncertain future is not in their best interests.

Moreover, we look to a parent's past performance to help predict the quality of the future care the parent is capable of providing. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). The father has refused to enter substance abuse treatment despite long-term addiction and extensive use of drugs during the previous year. He did not participate in services aimed at reunification. In thirteen months of DHS supervision, the father had only two visits with his children. At the time of the termination hearing, he was in jail on drug charges. While in jail, he admitted to misrepresenting his addiction to gain access to methadone so he could sleep for several days. He also had no income, home, or ability to provide for the three children. The father's recent conduct and current situation indicate the long-term best interest of the children is served by terminating his parental rights so that the children may be available for adoption.

### B. Mother

The mother requests an additional six months to work toward reunification. Iowa Code section 232.104(2)(b) sets forth the option of continuing placement after a permanency hearing, allowing the juvenile court to,

[e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

To continue placement for six months, the statute requires the court to determine the need for removal will no longer exist at the end of the extension. *Id.*; *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court could not make such a determination on the instant record:

> Much like [the father], [the mother] has no home, no employment, no income, and no ability to provide her five children with the permanent, safe, nurturing home they deserve. In addition, based on [the mother's] failure to participate in services for a period of more than seven months after removal of her children, her now admitted extensive drug use over the last year, and the uncertain status of her serious criminal charges it is also unlikely the children could be returned to her care if additional time were granted.

The mother's own testimony fails to instill confidence that her situation would change in six months. She told the court: "By six months, I could have a job, I could have a house, I could have all of my criminal charges resolved, and I could still be sober." The mere possibility of these achievements is too tenuous to postpone permanency for these children. The mother had been sober for 181 days at the time of hearing, but during that time she had been in custody. She has not shown the ability to stay away from drugs on her own, and in fact, denied for months she was using methamphetamine. Her denial does not bode well for future change. *See In re A.B.*, 815 N.W.2d 764, (Iowa 2012) (highlighting danger of leaving children "in the care of a meth addict"). Also, the mother has been

involved with DHS for the past decade, yet continues to fall back into the same pattern despite the opportunity for services. We agree with the juvenile court's refusal to grant the mother an additional six months to work on reunification.

The mother also argues it was not in the children's best interest to terminate her parental rights. She points out the school-aged children are excelling academically and contends their anger issues do not stem from a fear of returning to her custody. The mother's view was rebutted by testimony from the family's DHS case manager, Marijean Jackson, who explained that the older children have been pulled into a damaging cycle:

> Mom's back in treatment, Mom's gonna get clean, Mom's gonna get sober. We're gonna go back home, but yet at the same time, that anxiety is if we go home, how long are we going home for? How long is it going to be before you're back there and taking us back? . . . [S]o I believe that's caused them a lot of upheaval. They love their mother and they love the idea that one day they could have a home, but the cycle's went on for so many years that it makes them very nervous and very anxious.

We measure best interests by the statutory language, giving primary consideration to the children's safety, and to the best placement for promoting their long-term nurturing and growth and their physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2). Our supreme court has held: "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. The mother has had ten years to progress in her parenting and decision-making and has failed to do so. Maintaining their legal bond to the mother will not assure these children safety or long-term nurturing and growth.

The mother also argues the juvenile court should have opted not to terminate based on the factors in Iowa Code sections 232.116(3)(b) and (c). Subsection (b) provides the parental relationship need not be terminated if "the child is over ten years of age and objects to the termination." Subsection (c) provides the parental relationship need not be terminated if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

A.C. and E.C., who were eleven and twelve years old respectively at the time of the hearing, told DHS worker Jackson that their first desire was to return to their mother's home.[2] But the worker testified "they are torn" and understand the reality may be that their mother cannot care for them because of her recurring substance abuse problems. Moreover, both guardians ad litem[3] supported termination of parental rights. The older children's yearning for reunification did not tilt the balance away from termination.

Analyzing section 232.116(3)(c), "our consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). While the record shows the children love their mother, we see no evidence the bonds are so strong as to outweigh the children's need for permanency.

---

[2] The boys' second desire was to stay with their foster parents who have expressed a willingness to adopt them.

[3] E.C. and A.C. were represented by one guardian ad litem. A.N., J.N., and G.N. were represented by a different guardian ad litem.

Finally, the mother asks for the children to be placed in a guardianship. A guardianship is not a legally preferable alternative to termination of parental rights and adoption. *In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992). Termination is the appropriate solution when a parent is unable to regain custody within the time frames of chapter 232. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). DHS worker Jackson opined a guardianship would not afford the children the same chance at permanency as termination followed by adoption. She noted a guardianship could be challenged by the parents. Indeed, the mother acknowledged she would likely challenge the guardianship so the children could be returned to her. In this case, the juvenile court appropriately declined the guardianship option in favor of termination.

**AFFIRMED.**