# IN THE COURT OF APPEALS OF IOWA

No. 13-1320
Filed September 17, 2014

**IN THE INTEREST OF Z.H. and J.H.-G.,**
    **Minor Children,**

**A.H., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Constance Cohen, Associate Juvenile Judge.

A mother appeals from a juvenile court order terminating her parental rights to two children. **AFFIRMED.**

Aaron H. Ginkens of Ginkens Law Firm, P.L.C., Clive, for appellant-mother.

Donna Beary, Des Moines, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Brown, Assistant County Attorney, for appellee.

Nicole Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., Bower, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MILLER, S.J.**

## I. FACTUAL BACKGROUND.

Ashley is the mother of Z.H. and J.H.-G. ("the children"). The children were born in June 2010 and June 2012 respectively, and were thus three years of age and one year of age respectively at the time of a June and July 2013 termination of parental rights hearing. Mark is Z.H.'s father, and J.H.-G.'s father is unknown. Ashley appeals from an August 2013 juvenile court order terminating her parental rights to the children. (The order also terminated the parental rights of Mark, and the parental rights of any unknown putative father of J.H.-G. Mark appealed, and his appeal was later dismissed by order of our supreme court. No putative father of J.H.-G. has appealed.) We affirm.

Following an extended contested hearing the juvenile court ordered Ashley's parental rights to the children terminated pursuant to Iowa Code sections 232.116(1)(d) and (*l*) (2013), and in addition ordered her parental rights to J.H.-G. terminated pursuant to Iowa Code section 232.116(1)(h). On appeal Ashley questions (1) whether termination is in the children's best interest, and (2) whether termination was proper "given the closeness and bond of the parent-child relationship."

## II. SCOPE AND STANDARDS OF REVIEW.

Our review a termination of parental rights proceeding is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We are not bound by the juvenile court's findings of fact, but we give them weight, especially when considering credibility of witnesses. Iowa R. App. P. 6.904(3)(g); *In re C.B.*, 611 N.W.2d 489, 492

(Iowa 2000). Grounds for termination of parental rights must be proved by clear and convincing evidence. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Clear and convincing evidence" means there are no serious or substantial doubts as to the correctness of the conclusions drawn from it. *C.B.*, 611 N.W.2d at 492; *Raim v. Stanzel*, 339 N.W.2d 621, 624 (Iowa 1983).

## III. ANALYSIS.

Ashley does not dispute the existence of the statutory grounds for termination relied on by the juvenile court and noted above, but first questions whether termination was in the best interest of the children. We therefore first consider the factors in Iowa Code section 232.116(2). *See P.L.*, 778 N.W.2d at 40. It requires that we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

Ashley and a long-term female partner had decided they wanted to start a family. Ashley advertised on Craiglist for a "sperm donor." Mark agreed to be just that. It was their intention that he would not have a relationship with the resulting child. Z.H. was conceived by Ashley and Mark and was born in June 2010.

By later agreement of Mark and Ashley, Mark developed a minimal relationship with Z.H., upon occasion providing Z.H.'s care when Ashley was working. When Z.H. was about one year of age Mark felt that Ashley had

become an unfit parent. Mark maintained physical custody of Z.H. for about five months, ending in December 2011 when he went to jail.

J.H.-G. was born to Ashley in June 2012, the product of one of a series of "one-night stands." J.H.-G.'s father is unknown.

The children were removed from parental custody in mid-December 2012 when Ashley tested positive for methamphetamine. Z.H. also tested positive for methamphetamine at that time. The children were placed in the legal custody of the Iowa Department of Human Services (DHS) for placement in family foster care. Services were ordered for the parents and children. The children were initially placed in one family foster home, but in early 2013 were moved to a second family foster home. They have thereafter remained in the legal custody of the DHS, placed in the second home, which is a pre-adoptive home.

Ashley suffers from anxiety and depression, for which she takes medications. As part of the case plan she was to arrange for and participate in therapy. Low end sliding-fee-scale providers were recommended, including Eyerly Ball. Ashley refused to go to Eyerly Ball as she did not like it and wanted to go elsewhere. As of the first day of the termination hearing she had only scheduled and attended an April intake session and one more session, the second occurring the day before the first day of the termination hearing. As of the second day of the termination hearing, a month later, she had attended no further therapy sessions, stating she then intended to explore participating in therapy at Eyerly Ball.

During the last six months before the children's removal Ashley's relationship with her partner had been characterized by domestic violence. Ashley also had a history of exposing the children to people who could be dangerous to them. Ashley was to address domestic violence, relationship issues, and co-dependency through counseling during the underlying child in need of assistance (CINA) proceedings. At the conclusion of the termination hearing she had not done so.

Ashley understood that as a result of testing positive for methamphetamine it was crucial to reunification with the children that she was drug free and demonstrated that fact. She was required to provide urine samples for analysis and understood that any occasions upon which she was required to provide urine and did not do so would be considered a "dirty" test. From December 22, 2012, through March 22, 2013, Ashley provided samples on six occasions, and all were negative for drugs. However, from January 30, 2013, through June 5, 2013, she failed to provide required samples on nine occasions, including all four required occasions after March 22.

Regular and continuing contact and communication with Ashley's children was important to her being able to be reunified with them. Ashley was originally to see the children three times per week, one and one-half hours per occasion, and to have frequent telephone contact with them. She was inconsistent with her visitation, resulting in unnecessary time and travel on the part of service providers and foster parents and disappointed expectations on the part of the children. Her visitations were therefore reduced to two times per week, still a

total of four and one-half hours, in the hope that with fewer visits she would more consistently attend them. From April 19 through May 24, 2013, Ashley nevertheless missed five visits, about one-half of her scheduled visits. In the month between the June and July termination hearing dates Ashley missed two more visits.

Until almost the first day of the termination hearing Ashley had no stable residence, alternating residing with relatives and a friend. She has been unable to secure any consistent employment. Although registered with an employment agency, at both the first and second termination hearing dates Ashley was "between jobs" and with no prospect of employment available in the reasonably foreseeable future other than some ongoing babysitting.

During the pendency of the termination proceedings Ashley was charged with and pled guilty to interference with official acts and was charged with prostitution.

The children are at adoptable ages. J.H.-G., who was speech delayed at the time of removal, has overcome that difficulty. The children are doing very well in their now long-term, pre-adoptive foster home. Ashley has not addressed and dealt with many of the issues that prevent her from safely and properly parenting the children. At the June 2013 hearing date she acknowledged she was not yet at a point where the children could be returned to her. At the July hearing date Ashley requested an additional six months to get "more on track," implicitly acknowledging the children could still not be returned to her within the reasonably foreseeable future.

We conclude that terminating parental rights so the children can acquire a safe, stable, and permanent home gives primary concern to their safety, the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional needs. We therefore conclude that termination of Ashley's parental rights is in their best interest.

Ashley questions whether termination was proper "given the closeness and bond of the parent-child relationship." This implicates Iowa Code section 232.116(3)(c), which provides that termination need not occur if the court finds "clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to closeness of the parent-child relationship." We must therefore consider and decide whether this exception to termination applies. *See P.L.*, 778 N.W.2d at 40.

The provisions of section 232.116(3) are permissive, not mandatory. *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997), *overruled on other grounds by P.L.*, 778 N.W.2d at 40. The court uses its best judgment in applying the factors contained in that statute. *P.L.*, 778 N.W.2d at 40. "A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests." *J.E.*, 723 N.W.2d at 801 (Cady, J., concurring specially). When the statutory grounds for termination of parental rights exist, the needs of a child are generally promoted by termination. *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992).

The evidence shows that some bond remains between Ashley and the children. It also shows that because of Ashley's missed and inconsistent

visitations and resulting disappointed expectations on the part of the children, as well as their long absence from her physical custody, any remaining bond is not as strong as it once was.  As noted above, the children are thriving in their pre-adoptive foster home.  We conclude, as the juvenile court did, that "[a]though there is a bond, this bond is not significant enough to outweigh termination of parental rights being in the children's best interest."

**AFFIRMED.**