# IN THE COURT OF APPEALS OF IOWA

No. 14-1140
Filed January 28, 2015

IN THE INTEREST OF C.M. and A.M,
    Minor Children,

B.M., Father,
    Appellant,

A.V., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


A mother and father appeal from the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


Douglas Cook, of Cook Law Office, Jewell, for appellant-father.

Christopher S. O'Brien, of O'Brien Law Office, Fort Dodge, for appellant-

mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Cori Kuhn-Coleman, County Attorney, and Jordan W. Brackey,

Assistant County Attorney, for appellee.

Marcy Lundberg, Fort Dodge, attorney and guardian ad litem for minor

children.


Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Amanda, the mother, and Ben, the father, each appeal the order terminating their respective parental rights to their two children, C.M. and A.M. Amanda and Ben do not challenge the sufficiency of the evidence supporting the statutory grounds for termination. They do contend, however, that termination of their respective parental rights is not in the children's best interests and that the juvenile court erred in finding the children could not be returned to the parents if given additional time.

I.

Amanda and Ben have a long history of substance abuse and domestic violence predating the initiation of this proceeding and continuing largely unabated during the pendency of this proceeding. This proceeding commenced in March 2013 when the children were voluntarily removed from the parents after newborn A.M. tested positive for methamphetamine. Amanda and Ben also both tested positive for methamphetamine at that time. Shortly thereafter, in April, Ben assaulted Amanda, breaking three of her ribs. In May, Ben went to Amanda's home while Amanda was exercising visitation with the children. Rather than spending time with the children, Amanda and Ben began drinking. When Amanda's mother came to the home to remove the children, Ben assaulted Amanda's mother, and Amanda assaulted Ben. Amanda and Ben were arrested, and the children were placed with relatives. Ultimately, Amanda was convicted of an amended charge of disorderly conduct arising out of this incident.

In July of 2013, Amanda again tested positive for methamphetamine, and Ben failed to appear for required testing. Amanda admitted to using methamphetamine on September 2, 2013, the day before she was to enter a residential substance abuse treatment program at the YWCA, a facility at which the children could reside with her. On September 12, the children were adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2013), and continued in relative placement until they could join Amanda. On September 20, the children were placed with Amanda at the YWCA with specific expectations she follow the program rules and not supervise visits between Ben and the children.

Within one month of entering the residential treatment program, Amanda had violated facility rules several times, took the children outside the facility to meet with Ben unsupervised, and lied about needing to leave the facility to attend the funeral of a person she falsely claimed was Ben's grandfather. With respect to this latter incident, Amanda was denied a weekend pass to attend the funeral with Ben. She asked what would happen if she left, and she was told the children would be placed in foster care. Despite this, Amanda called her aunt to get the children for the weekend so that Amanda could leave the facility with Ben. Following this incident, the children were in fact placed in foster care.

In mid-November, the State petitioned to terminate the parental rights of both parents pursuant to Iowa Code section 232.116(1)(a), (e), (h), and (*l*). In the order terminating the parents' respective rights, the juvenile court found the State had proved grounds for termination pursuant to section 232.116(1)(h)—finding

domestic violence, anger management, and substance abuse as unresolved issues preventing return of the children—and pursuant to section 232.116(1)(*l*)— finding the parents' severe substance-related disorders and violent behavior presented a danger to themselves or others that precluded return of the children to the parents' care within a reasonable time.

The juvenile court found termination was in the children's best interests. Regarding Amanda, the court noted her visitation had not progressed beyond fully-supervised largely because Amanda had not made any progress in addressing domestic violence in her relationship with Ben. Regarding Ben, the court noted Ben was unavailable at the time of the termination hearing due to his incarceration. Ben's incarceration arose out of an offense occurring four days prior to the scheduled termination hearing in May 2014. Specifically, Ben was arrested and charged with assault on a police officer while using or displaying a dangerous weapon after he pulled a knife on officers responding to another domestic disturbance involving Ben and Amanda. The court also found Ben's continued substance abuse, displays of violence in the presence of the children, and his "propensity for conduct incompatible with parenthood" all militated in favor of terminating his parental rights.

Both parents asked for additional time for reunification. The juvenile court denied both requests, finding neither Amanda nor Ben had demonstrated they were able to provide "constant, responsible, and reliable care to the children" and there was "nothing in the extended history of this case that allows the Court to

conclude that there is a reasonable likelihood that real change will occur that will eliminate the need for removal over the next six months." Both parents appeal.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480-81. While giving weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" where there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* If a parent does not challenge the statutory grounds, we need not address them on appeal. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.*

Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *Id.*

III.

A.

Both parents contend termination is not in the best interest of the children. Amanda argues she "complied with all expectations as best she could," and was able "to comply substantially with services and stay clean all while being pregnant."[1] She also argues there were "unreasonable expectations, a lack of curative efforts," and "an extremely brief period of reunification efforts." Ben argues he provided for the children and did "what he could within [department of human services] constraints." We note two things of import regarding the parents' arguments within the best-interest rubric. First, neither parent identifies with any specificity the "unreasonable expectations," the lacking "curative efforts," or the "constraints" allegedly precluding termination. Second, neither parent identifies any particular reason why the termination of their respective parental rights is not in the children's best interest. We conclude the termination of parental rights is in the children's best interests.

As a general rule, when the statutory grounds for termination of parental rights have been proved, the termination of parental rights is in the best interests of the children. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992). However, there is no all-encompassing best interest standard that can resolve any

---

[1] The mother gave birth to a child in March 2014.

particular case. The court thus must look at the particular facts and circumstances of each case, determining the children's short-, intermediate-, and long-term best interests. *See* Iowa Code § 232.116(2) (identifying relevant considerations); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (stating the court most look to immediate- and long-term interests). In this case, the main issues resulting in the children's removal were substance abuse and domestic violence and the related harm those issues cause the children.

With respect to Amanda, the adjudication order entered July 2013 required Amanda to abstain from mood altering substances including alcohol, to provide drug and alcohol screening as requested, to participate fully in all recommended substance abuse treatment, and to participate fully in all recommended mental health treatment. Subsequent orders contained the same requirements. The contract of expectations for Amanda also provided she needed to engage in counseling regarding domestic violence. Nearly nine months later, in the March 2014 dispositional review order, the court found:

> On September 3, 2013, the mother was admitted to the YWCA. The children were reunified with the mother on September 20, 2013, subject to specific expectations. The mother left the YWCA on October 4, 2013, so that she could be with the father, and called her aunt to come and get the children. The children were placed in foster care on that date. The relationship between the mother and the father continues to be volatile. The mother is attending substance abuse treatment, although inconsistently. The mother last received counseling from Catholic Social Services on January 23, 2014. Since the end of October 2013, the mother has been asked to drug test on eleven occasions. She provided drug testing on only two occasions.

The termination hearing was not held until May 28, 2014. By that time, Amanda had had over eleven months to comply with requirements, yet she was still

drinking alcohol, she had not been consistent in counseling, she had not shown up for three of nine requested drug tests since the March review order, and she was still involved in a domestically-violent relationship.

With regard to Ben, although he completed substance abuse evaluations, his attendance at substance abuse treatment at the time of termination was inconsistent. He failed to appear for the vast majority of his drug screenings; between October 2013 and March 2014 he participated in only two of eleven requested drug tests. On May 14, 2014, his urine test was "non-negative," meaning he altered the test or his urine specimen. He failed to complete anger management classes. His conduct during the course of these proceedings demonstrates he has not made progress with his anger management and criminal behavior. As previously mentioned, only four days before the termination hearing he was arrested for displaying a dangerous weapon at a police officer during an arrest made in response to a domestic violence call.

In sum, the parents had ample time to address the issues giving rise to removal of the children. There is no indication the parents can resolve their substance abuse issues or pattern of violence to provide a safe and stable home for these children. We "cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *See P.L.*, 778 N.W.2d at 41; *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating

that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future).

In contrast to the unsafe and unstable environment in the parents' home, the children are in a safe space. All the siblings are placed together in a pre-adoptive home. The foster parents can meet the children's needs. The children are bonding with their foster parents, and the foster parents wish to adopt the children. This militates in favor of terminating parental rights. *See* Iowa Code § 232.116(2)(b) (stating it is a relevant consideration "whether the foster family is able and willing to permanently integrate the child into the foster family").

Considering all factors in Iowa Code section 232.116(2), we conclude termination of Amanda and Ben's parental rights is in the children's best interests.

B.

The parents also contend the juvenile court erred in finding the children could not be returned if additional time for reunification was granted. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We conclude the district court did not err in denying the parents' request for more time.

Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sep. 17, 2014) ("What's past is prologue."); *see also A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding we must look to a parent's past behavior as indicative of the quality of care the parent is capable of providing in the future). Here, the parents' past conduct demonstrates it is unlikely the grounds for removal will no longer exist in six months. In the six years prior to this proceeding, Ben completed seven substance abuse evaluations but only completed treatment twice. He has a long history of criminal violence, including convictions for assault of varying degrees and types in 2005, 2009, 2010, 2011, 2012, and 2013, all demonstrating an inability to manage his anger over an extended period of time. Amanda has a history of poly-substance abuse since her teenage years, including alcohol, marijuana, methamphetamine, cocaine, LSD, ecstasy, and huffing paint, starter fluid, and gasoline. In addition, Amanda has an older daughter who was placed with a relative in approximately 2007 due to concerns of substance abuse and violence similar to those present in this case.

Even within the context of this proceeding, while the parents were receiving services from IDHS, they were not able to progress. They failed to appear for drug tests and complete substance abuse treatment. They continued to use alcohol. A mere four days prior to the termination hearing in this case, the police were called to the parties' residence for a domestic disturbance involving

the use of alcohol. Ben displayed a knife at a responding officer and was abusive to the authorities before, during, and after his arrest. In short, there is nothing indicating the parents could provide constant and reliable care for the children if granted additional time to work toward reunification. The court correctly declined to order additional time for reunification.

IV.

For the foregoing reasons, we affirm the order terminating Amanda and Ben's respective parental rights to the children at issue.

**AFFIRMED ON BOTH APPEALS.**