**IN THE COURT OF APPEALS OF IOWA**

No. 16-0510
Filed June 15, 2016

**IN THE INTEREST OF A.E. AND B.E.,**
**Minor children,**

**M.N., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

The mother appeals from an order terminating her parental rights in her children pursuant to Iowa Code chapter 232 (2015). **AFFIRMED.**

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Crystal L. Ely of the North Iowa Youth Law Center, Mason City, for minor children.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Maranda appeals from orders terminating her parental rights in her children, A.E. and B.E., ages seven and six, respectively, pursuant to Iowa Code section 232.116(1)(e) and (f) (2015). The children were removed from Maranda's care in August of 2014 due to concerns for the children's safety related to the mother's general instability, including lack of housing, the mother's untreated mental health condition, the mother's substance abuse, and domestic violence between the mother and her boyfriend. At the time of the termination hearing, the children were in the custody of the Iowa Department of Human Services ("IDHS") and placed with the paternal grandmother with the expectation that the children would be placed with their father within thirty days.

I.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While giving weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will uphold an order terminating parental rights only if there is clear and convincing evidence supporting termination of the parent's rights. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "Evidence is considered clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *M.W.*, 876 N.W.2d at 219.

II.

Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis. The first step is to determine whether any ground for termination under section 232.116(1) has been established. If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

*Id.* at 219-20.

A.

Maranda does not directly challenge the sufficiency of the evidence establishing the grounds for termination. On de novo review, we conclude there is clear and convincing evidence authorizing the termination of Maranda's rights pursuant to 232.116(1)(f). *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999) (providing where the juvenile court terminates a parent's rights on more than one statutory ground, we may affirm if any of the grounds is supported by clear and convincing evidence).

Maranda indirectly challenges the grounds for termination, contending IDHS failed to enter a case permanency plan. The State responds that the mother failed to preserve error on this issue. *See id.* at 65 (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error). We agree. Maranda did not timely raise any concern regarding the lack of a case permanency plan during this proceeding. *See In re T.M., Jr.*, No. 99-0501, 1999 WL 1136867, at *2 (Iowa Ct. App. Dec. 13, 1999)

(holding mother failed to preserve error and stating "[i]t is too late to challenge the service plan at the termination hearing").

Even if error had been preserved, the claim is without merit. First, Maranda's argument regarding the case permanency plan raises form over substance. The case permanency plan was created and entered in another case involving the termination of Maranda's rights to another child not at issue in this appeal. IDHS provided services to Maranda in accord with the plan, including family safety risk and permanency ("FSRP") services; individual therapy; relationship therapy; relative placement; supervised visitation; substance abuse treatment; transportation assistance; and housing assistance. Maranda was well aware of the services being provided to her, the issues requiring attention and correction, and the steps necessary to have the children returned to her care. *See* Iowa Code § 232.2(4)(a)-(m) (setting forth requirements of permanency plan).

Second, even if we construed Maranda's argument more broadly to mean the State failed to make reasonable efforts to preserve and reunify the family, her claim would fail. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *C.B.*, 611 N.W.2d at 493. "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which

require reunification efforts." *C.B.*, 611 N.W.2d at 493. The core of the reasonable efforts mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493.

This is not a case in which the State failed to make reasonable efforts; it is a case in which the mother failed to use the services offered. Here, Maranda did not consistently use the services provided to her to address and resolve the issues precipitating removal. She admitted she was not consistent with FSRP services. At the time of the termination hearing, she had unstable housing. She lacked employment. She resided with someone unwilling to be involved with IDHS. Maranda did not know the last name of the person with whom she was residing. By her own admission, Maranda had not complied with her substance abuse treatment until shortly before the termination hearing. Even then, however, she missed all of her drug tests leading up to the termination hearing and failed to demonstrate sobriety. Maranda abandoned the children for long stretches during the pendency of the case, admitting she had a "lack of contact for a long period of time." She had a single visit with the children in April of 2015 and then not again until January 2016, one month prior to the termination hearing. Under the circumstances, the State satisfied the reasonable efforts requirement. *See, e.g.*, *In re B.G.*, No. 15-0732, 2015 WL 5996936, at *4 (Iowa Ct. App. Oct. 14, 2015) (holding the State established reasonable efforts where services were provided but the mother did not avail herself of the services); *In re*

*B.B.*, No. 12-0807, 2012 WL 2408714, at *3 (Iowa Ct. App. June 27, 2012) ("Considering the number and variety of services offered or provided, the delays in or failure of services attributable to the mother, the age of the child, and the length of time the child has been removed from the mother's care, we find the State made reasonable efforts to reunite the mother with her daughter.").

Maranda also raises a procedural claim related to the services provided to her. She claims the case was switched from one case manager to another because the prior case manager had a conflict of interest. At the termination hearing, the case manager testified Maranda's case was transferred to another county because the children's father was dating a relative of an employee of the department. Maranda does not identify what harm, if any, was caused by switching case managers. We do not find any. We reject Maranda's claim.

B.

We next address the best interests of the children. When we consider whether it is in the best interests of the children to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Maranda makes several interrelated arguments regarding the best interests of the children. From what we can discern, Maranda contends termination of her parental rights is not in the best interests of the children because (1) the children can be protected by the father from any potential harm created by her and (2) she progressed in her mental health treatment. We

conclude the State proved the termination of Maranda's parental rights is in the best interests of her children.

As a general rule, when the statutory grounds for termination of parental rights have been proved, the termination of parental rights is in the best interests of the children. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992). As set forth above, Maranda largely failed to use the services provided to her and largely failed to address the issues leading to removal and posing risk of harm to the children until immediately prior to the termination hearing. Her contention that the children's father can protect the children from her does not change our conclusion that it is in the best interests of the children to terminate Maranda's parental rights in them. Our conclusion is also unchanged by Maranda's contention that her rights should not be terminated because she made progress in her mental health treatment immediately prior to the termination hearing. Her therapist testified at the termination hearing that Maranda had made dramatic improvement in a short period of time with respect to her mental health. Maranda's case worker testified, however, "But in regards to all of the other goals, there is no progress made."

After sleepwalking through the first three quarters of this case, Maranda's furious fourth-quarter rally falls short. *See In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to

preclude termination of parental rights."); *In re I.V.*, No. 15-0608, 2015 WL 4486237, at *2-3 (Iowa Ct. App. July 22, 2015) (holding "last-minute" use of services for litigation purposes was insufficient to demonstrate the child could be returned to the mother's care).

## C.

Finally, we consider whether the exceptions in section 232.116(3) apply to this case and should serve to preclude the termination of Maranda's parental rights. The "exceptions" to termination are permissive and not mandatory. *See A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

Maranda argues termination is unwarranted here because the children were placed with the grandmother at the time of the termination hearing with the expectation they would be placed with the father. The statutory exception upon which Maranda relies is not applicable here. Section 232.116(3)(a) provides the court need not terminate the parent-child relationship if a "relative has legal custody of the child." In this case, IDHS had legal custody of the children, although the children had been placed in the physical care of the grandmother. Accordingly, the statutory exception is not applicable. *See A.M.*, 843 N.W.2d at 113.

Maranda argues termination should not proceed here because of the close relationship she has with the children. Section 232.116(3)(c) provides the court may avoid termination if "[t]here is clear and convincing evidence that the

termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the mother's inability to provide for the children's developing needs. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). The mother has been involved in services for some time now without resolving the issues leading to removal. The children and the mother do have an attachment; however, we do not believe the potential harm associated with termination overcomes the mother's inability to care for the children. The service providers testified the mother cannot care for the children in the long-term. She lacks employment and shelter. She has a long history of untreated mental health issues and substance abuse. "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *M.W.*, 876 N.W.2d at 224.

## III.

For the foregoing reasons, we affirm the orders terminating the mother's parental rights in her children A.E. and B.E.

**AFFIRMED.**