**In the Interest of L.M.F., A Minor Child,**

**M.F., Mother, Appellant.**

**No. 91–1889.**

Court of Appeals of Iowa.

June 25, 1992.

John S. Pieters, of Pieters, Pieters & Corzine, Waterloo, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Jon Fister, of Beecher, Rathert, Roberts, Field, Fister, Walker & Morris, Waterloo, for appellee grandmother.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

L.M.F. was born on November 21, 1988, to M.F., her mother, and R.F., her father. The parents separated soon after L.M.F.'s

birth. M.F. then moved to Iowa from Texas, where R.F. was on parole.

On April 2, 1989, the Cedar Falls police were called to M.F.'s apartment. The officers removed L.M.F. because M.F. had been drinking for seventeen hours with several males and was too intoxicated to care for her daughter.

A child in need of assistance petition alleging neglect and lack of supervision was filed by the State. At a subsequent hearing, M.F. did not contest removal. The juvenile court ordered family services and substance abuse evaluation.

In April 1989 M.F. was evicted from her apartment, fired from her job, and she took an overdose of sleeping pills and was hospitalized. During this time, family services were terminated due to M.F.'s lack of involvement.

On April 28, 1989, the paternal grandmother filed a petition for intervention. The grandmother asked the juvenile court to place the child in her custody.

An adjudicatory hearing was held on May 15, 1989, on the CINA petition and the petition for intervention. The child was physically placed with the grandmother.

On April 20, 1990, a decree was entered dissolving the marriage of M.F. and R.F. The district court approved the parents' stipulation to joint custody of L.M.F. with physical placement of the child with R.F. Because of this decree and because the grandmother intended to move to Arkansas, the State filed a request for an emergency review hearing. The juvenile court determined the custodial orders previously entered remained in effect and the custodial grandmother should be permitted to move to Arkansas.

On February 20, 1991, the mother filed a motion to modify the dispositional order. M.F. requested L.M.F. be returned to Iowa and placed in the home of either parent or a foster home.

On May 17, 1991, the grandmother filed a petition for termination of parental rights of both parents so she could adopt L.M.F. R.F. consented to the termination of his parental rights. M.F. resisted termination and requested the child be returned to her custody. The juvenile court concluded the best interests of the child would be served by termination of M.F.'s parental rights and adoption by the grandmother. This appeal followed.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing *Dameron*, 306 N.W.2d at 745).

M.F. argues the juvenile court should have placed the child with the paternal grandmother under a permanency order pursuant to Iowa Code section 232.104 rather than terminating her parental rights. In the alternative, M.F. challenges the sufficiency of the evidence to terminate her parental rights.

■ Turning to M.F.'s first argument, we disagree permanency orders are the legally preferential alternative in this type of case. Before the court may enter a permanency order, one condition which must be shown is "termination of the parent-child relationship would not be in the

best interest of the child." *See* Iowa Code § 232.104(3)(a) (1991). The legislature has categorically determined "the needs of a child are promoted by termination of parental rights" if the grounds for termination of parental rights exist. *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). Thus, we turn to M.F.'s alternative argument and determine whether the evidence is sufficient to terminate M.F.'s parental rights on any ground for termination within section 232.116. If the answer is in the affirmative, termination of parental rights was the proper alternative for the juvenile court to decree rather than a permanency order.

■ The juvenile court terminated M.F.'s parental rights under Iowa Code section 232.116(1)(d) and (g). Iowa Code section 232.116(1)(d) permits the juvenile court to terminate the parent-child relationship if the child has been adjudicated in need of assistance, has been placed out of the parent's custody for more than six consecutive months, and there is clear and convincing evidence the parent has not maintained significant and meaningful contact with the child and has made no reasonable effort to resume care of the child. Iowa Code section 232.116(1)(g) permits the juvenile court to terminate the parent-child relationship if the child is three years of age or younger, has been adjudicated a child in need of assistance, has been placed out of the parent's custody for at least six of the last twelve months, and there is clear and convincing evidence the child cannot be returned to the custody of the parent at the present time. We hold there is clear and convincing evidence supporting termination of parental rights on both grounds.

L.M.F. has been in the custody of the grandmother since July 1989. Since removal, M.F. has had only minimum contact with the child. M.F. has seen the child for one two-hour visit since the move to Arkansas. She has called only once every two to three months. M.F. has sent no letters so they could be read to the child, and she has provided no financial assistance to the child. We do not find this degree of contact to be significant and meaningful.

Nor do we find reasonable efforts have been made to resume care of the child. M.F. has not been able to hold a steady job and was unemployed at the time of the termination hearing. The record offers no evidence M.F. is prepared to provide an adequate home for the child. She was still living with friends and relatives at the time of the hearing. These same facts support our conclusion there is clear and convincing evidence the child cannot be returned to the custody of M.F. at the present time. We also consider M.F.'s history of alcohol abuse and adverse reactions to the termination of her relationships with men. Such reactions include a suicide attempt. In the past, M.F. has sought psychiatric care, but has not followed through with follow-up outpatient care.

We give additional consideration to the relationship which exists between the grandmother and the child. The child has been in the grandmother's care since she was four and one-half months old. The reports indicate the grandmother has adequately provided for the needs of L.M.F. The child's familial identity lies with the grandmother. Testimony indicates L.M.F. recognizes M.F. as an important figure in her life; however, she does not recognize M.F. as "mother." A child should not be forced to endlessly suffer parentless limbo. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1987).

We hold termination of M.F.'s parental rights is supported by clear and convincing evidence. We further hold termination was the proper alternative for the juvenile court to decree.

AFFIRMED.

DONIELSON, P.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I dissent. I would order the child permanently be placed with her paternal grandmother. I would reverse the termination.

The child was placed with her paternal grandmother following some serious problems the birth mother had in parenting her

child. After placement with the grandmother, the marriage of the mother and father was dissolved. The birth parents were granted joint custody, but the birth father was named physical custodian, and his mother, the paternal grandmother, continued to care for the child. The grandmother moved with the child to Arkansas. The grandmother sought to adopt the child in Arkansas, but the adoption was not granted. The birth mother sought to get the child returned to Iowa. The grandmother then sought termination in Iowa and her son consented.

My first question is, what is the standing of the grandmother to petition for adoption if the child has been placed with her in a foster care situation?

My second question is, how do we assess the issue of the birth mother's parenting skills when she was not granted physical care of the child in the dissolution decree?

My third question is, how can we assess the issue of reasonable efforts to unite the birth mother with her child when the child is allowed to go to Arkansas with the grandmother and the mother, who lives at the poverty level, has few resources to allow her to contact the child? The majority opinion does not address these three issues.

The birth mother made efforts to attend parenting classes and work on a substance abuse problem. She maintained contact with the department. She maintained limited contact with the child. She has a second child. There is no evidence she poses a harm to the child. I find no evidence she is not an adequate noncustodial parent. Her parental rights should not have been terminated.