IN THE COURT OF APPEALS OF IOWA

No. 15-0549
Filed June 10, 2015

IN THE INTEREST OF S.W., F.W., H.W., J.W., AND J.W.,
Minor Children,

H.W., Father,
Appellant,

C.W., Mother,
Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother and father each appeal the juvenile court's termination of their rights to their five children. **REVERSED ON BOTH APPEALS.**

Shannon J. Leighty of the Public Defender's Office, Nevada, for appellant father.

Kimberly Voss-Orr, Ames, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Stephen Holmes, County Attorney, and Shawna Johnson, Assistant County Attorney, for appellee State.

Mark Olberding, Nevada, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

A mother and father each appeal the juvenile court's termination of their rights to their five children.

**I. Factual and Procedural Background**

The five children, ranging in age from six to ten years old, came to the attention of the Iowa Department of Human Services (DHS) after an incident on September 7, 2013, in which the father assaulted the mother in the presence of the children. The father was arrested and incarcerated for approximately one year.[1]

The mother engaged with DHS and agreed as part of a safety plan to prevent the children from making contact with the father. A criminal no-contact order was also in place as between the mother and father. In October, DHS learned the mother had been in contact with the father and had been encouraging the children to communicate with the father through letters while he was incarcerated. The children were temporarily removed from the mother's care on October 4, 2013. On November 4, 2013, the children were returned to her custody based on a stipulation by the parties attesting to the mother's full cooperation with DHS and that the risk to the children was no longer present. The children were adjudicated children in need of assistance (CINA) on November 13, 2013.

On January 14, 2014, the juvenile court entered a dispositional order adopting the recommendations of DHS. The requirements included behavioral

---

[1] Though the father was incarcerated, he regularly participated in court proceedings regarding the children by telephone.

health intervention services (BHIS) for the children; family safety, risk, and permanency services (FSRP) for the mother; and individual counseling for the children and the mother. The children remained in their mother's care; she and the children received social security disability benefits.

On April 22, 2014, the mother gave consent for DHS to remove the children temporarily from her care. Her consent followed a founded denial-of-critical-care assessment involving the mother's lack of food and electricity, and roommates who had been using marijuana. The court entered an order removing the children, and the children have not been returned to either parent since that time. The five children live in several different foster homes. The children were in a "deplorable" state at the time of their removal, without adequate clothing and dirty, aggressive, and with sexualized behaviors.

A permanency hearing was held on August 20, 2014. Both the mother and father participated via telephone conference call. The mother and DHS requested a continuation of placement for an additional six months. The court rejected the request and directed either the State or the children's guardian ad litem to initiate termination proceedings as to both the mother and father. The State filed a termination petition, alleging termination was proper under Iowa Code sections 232.116(1)(b) and (e) (2013). Section 232.116(1)(b) provides the juvenile court may terminate a parent's rights to a child if it "finds that there is clear and convincing evidence that the child has been abandoned or deserted." Section 232.116(1)(e) provides the juvenile court may terminate a parent's rights to a child if all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
>
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.

A hearing took place on January 26, 2015. The juvenile court issued its termination order on March 12, 2015. It found abandonment under section 232.116(1)(b) was not proved and did not support termination. It terminated both parents' rights based on the provisions of section 232.116(1)(e).

The evidence presented to the juvenile court at the January 26 hearing reflected both parents' efforts to maintain significant contact with the children and comply with the juvenile court's required steps toward reunification during the six months prior to the hearing—since July 26, 2014.[2] The State argued the efforts shown were not sufficient to avoid termination. The parents disagreed.

The mother had two two-hour visitations scheduled per week, and the record shows she took advantage of those opportunities. Visitation reports from August 4 through December 30, 2014 show in that period, the mother was

---

[2] Because the juvenile court relied upon Iowa Code section 232.116(1)(e), the pertinent facts for this court to consider are those that occurred "during the previous six consecutive months." We consider facts beginning on July 26, 2014, six months prior to the date of the hearing. Additionally, in deference to the juvenile court's determination that the mother's testimony was "somewhat less than credible," our review of the facts as to the period between July 26, 2014, and January 26, 2015, is based upon the testimony of DHS worker Jodi Krambeer and Children and Families of Iowa (CFI) worker Jennica Vest and the exhibits admitted at the hearing.

offered thirty-nine visitations.[3]  She attended twenty-nine of them.  She cancelled two of the visitations due to transportation problems.  She cancelled eight others, claiming health issues prevented her from attending.  Her CFI worker noted the mother always called ahead to communicate cancellations.

Though the visitations were sometimes described as "chaotic" due to the behavior of one or more of the five children, the mother's interactions were generally positive.  The mother would provide a meal for the children, play games with them, and encourage them with their homework.  Sometimes the children would act out, and the mother would redirect them or give them consequences for continued poor behavior.  The overseeing CFI worker would sometimes have to encourage the mother to redirect the children, and on one occasion the mother became overwhelmed with the behavior of one of her daughters and had to remove herself from the situation.  However, on the whole, the mother took advantage of the visitations and put forth observable effort in parenting the children during the visitation hours.

On September 16, 2014, the mother filed an application for additional services to ensure that visitations included all five of her children after one or more of the children had not been present at several visitations.  On January 6, 2015, she filed another application for additional services, asking the court to compel DHS to inspect her new apartment so she could begin hosting visitations with the children in her own home.

---

[3] There are some gaps in the record leaving us no evidence regarding four specific dates upon which the mother would normally have received visitation.  It is unclear from the record whether visitation was in fact offered on those dates or whether the mother attended.  We will only consider the visitation dates for which we have specific evidence.

The mother was in telephone contact with her children during this period. Though one of the children's foster parents testified the frequency of the calls was irregular, she also testified there were periods during which the mother would call to speak to the child every night. The mother visited one of the children when that child was in the hospital and became agitated when she was initially refused access to her daughter. The mother was also in regular telephone contact with DHS and CFI to discuss her children and her case.

Regarding the mother's efforts to complete DHS requirements, the record reflects she attended four individual counseling sessions with a CFI worker between November 11, 2014, and January 13, 2015. However, she cancelled two sessions and failed to attend two other prescheduled sessions in that same time period. The mother was required to attend a parenting class. She completed seventy percent of a parenting program before she stopped attending. The record reflects she stopped attending in "Fall of 2014." It is not clear how many classes she attended on or following July 26, 2014. However, the mother did reach out to the organization offering the classes in January of 2015 in preparation for the termination hearing, and she was informed she was welcome to return to assess whether she could complete the final three classes.

She was also required to find suitable housing. She secured an apartment on November 1, 2014, and asked that visitations take place in that apartment. The suitability of the apartment for visitations is contested,[4] but DHS

---

[4] The mother lives in the apartment with a male roommate who has a criminal history that concerns the State and the children's guardian ad litem. The mother insists their relationship is platonic.

has not visited the site to make a determination. The CFI worker has visited the apartment and reports no concerns about safety.

The father was released from incarceration in August of 2014. The juvenile court had imposed two requirements on him: "contact DHS when he is released from the correctional facility" and "cooperate with all DHS services upon his discharge." The father did contact DHS and filed an application with the juvenile court for additional services, asking for visitation with the children to commence immediately. He began weekly supervised visitation on October 26, 2014. Between October 26 and December 30, 2014, he was offered ten visitation hours. He attended nine in full but arrived an hour late on the other occasion purportedly due to a misunderstanding regarding the start time of the visitation.

The visitation records show the father struggled to redirect the children and appeared uncertain as to his role in the children's lives. The two boys seemed to respond very positively to the visitations and were happy to have their father back in their lives. The three girls were less enthusiastic about visitation with the father. However, the father has attempted to bond with the girls. For example, during one visitation, he helped the girls paint their fingernails and joked with them about doing so. He provided dinner for the children on a few occasions. He brought the children presents for Christmas. At the prodding of the overseeing CFI worker, he began over time to redirect the children when they behaved poorly, though he generally lacked control of the children during visitation.

Since his release, the father has entered a program at the Door of Faith Mission to improve general life skills through counseling. He works at the mission's thrift store as part of the program and participates in anger management classes and parenting classes. His participation in the program, if completed, will culminate in the father finding housing and gaining employment. The program typically takes twelve months to complete.

The juvenile court terminated the rights of both parents to the children pursuant to Iowa Code section 232.116(1)(e) without specific discussion of the statutory requirements as related to the facts. The mother and father each separately appeal the juvenile court's termination order.

## II. Standard of Review

We review the juvenile court's order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Discussion

On de novo review of termination orders, we first determine "if a ground for termination exists under section 232.116(1)." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). If such a ground exists, we then consider whether termination is in the children's best interests as defined in section 232.116(2). *See id.* We may in any case decline to terminate a parent's rights if the considerations of section 232.116(3) weigh against doing so. *See id.*

Facts supporting termination must be established by clear and convincing evidence. *See* Iowa Code § 232.117(3). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of]

conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

Both parents concede the first two requirements of Iowa Code section 232.116(1)(e) are met.[5] They instead argue there is not clear and convincing evidence in the record to support a finding they did not maintain significant and meaningful contact with the children during the relevant six-month period. "'[S]ignificant and meaningful contact' includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3). The duties contemplated by the statute "require[] continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and require[] that the parents establish and maintain a place of importance in the child's life." *Id.*

Turning first to the statutory requirement of maintaining significant and meaningful contact with the children, we evaluate the parents' actions in light of the statutory definition of an affirmative duty to make a genuine effort to complete the responsibilities prescribed in the case permanency plan. The record supports the parents' compliance, and we therefore do not find clear and convincing evidence in the record affirmatively establishing they have not maintained significant and meaningful contact with the children.

---

[5] The children were each individually adjudicated a child in need of assistance in prior juvenile court proceedings, with the resulting adjudication order filed on November 13, 2013. The children have been removed from the mother's physical custody since April 22, 2014, and from the father's physical custody since his arrest in September of 2013.

We first address the mother's claim. Although the mother cancelled several visitations during the relevant six-month period, she attended a significant majority of them.[6] The juvenile court relied heavily on the mother's cancellations of visits. It is true that a small number of visitations can reflect a lack of significant and meaningful contact, but our cases reflect that the number of visitations attended by the mother in this case is much greater than the number attended by parents whose rights we have terminated under this statutory standard. *See, e.g.*, *A.J.*, 553 N.W.2d at 912 (noting mother visited children only one time and father visited six times in the relevant six-month period); *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (noting mother visited child one time and called once every two or three months).

The mother appears to take her role as the children's mother seriously during visitation, and her multiple applications for additional services indicate she is committed to improving in that role. Between visitation, calls to the children in their foster homes, and visiting her daughter in the hospital, the mother has clearly demonstrated continued interest in the children, genuine efforts to maintain communication with them, and efforts to establish and maintain a place of importance in their lives.

Significant and meaningful contact includes an affirmative duty to put forth a genuine effort to complete DHS's requirements in her case permanency plan.

---

[6] The juvenile court found "the frequency of missed visitations noticeably increased in October of 2014." The court's finding mirrors one witness's testimony at the hearing. However, on our review of the record, the statement does not appear to be accurate. The mother cancelled two visitations out of eight in October, which is roughly average over the course of her visitations since the children were removed from her care.

While the mother's compliance with these requirements—particularly individual counseling and parenting classes—has not been perfect, there is record evidence demonstrating reasonable efforts to achieve those goals. In the relevant six-month period, she has attended individual counseling, been in contact with the provider of her parenting classes, and moved into an apartment. Even if that apartment is ultimately unsuitable for visitation, the mother has reasonably attempted to comply with the requirement that she find suitable housing. While they may not be sufficient for reunification, the mother put forward genuine efforts to complete the responsibilities prescribed in the case permanency plan since July 26, 2014.

We agree with the mother that the record does not affirmatively establish by clear and convincing evidence a failure to maintain significant and meaningful contact with the children. On our de novo review, we find Iowa Code section 232.116(1)(e) does not support termination of the mother's parental rights.

As to the father's claim, we again do not find clear and convincing evidence in the record affirmatively establishing he has not maintained significant and meaningful contact with the children throughout the relevant six-month period. Upon his release, the father swiftly began exercising his visitation rights, and the record reflects he has consistently attended visitation, demonstrating his continued interest in the children. Though his interactions with the children have been—in the words of the juvenile court—"fairly superficial," they nevertheless demonstrate genuine efforts to establish and maintain communication and a place of importance in the children's lives. The father struggles with parenting, but in a few short months he demonstrated a desire and genuine effort to

improve. On our de novo review, we find Iowa Code section 232.116(1)(e) does not support termination of the father's parental rights.

The court relied upon its finding that both parents'—but particularly the father's—interactions with the children were negative. This court has previously upheld terminations when visitations were frequent but of such poor quality that the duties of being a parent were clearly lost on the visiting parent. *See, e.g.*, *In re M.L.*, Nos. 02-1530, 02-1525, 2002 WL 31538225, at *2 (Iowa Ct. App. Nov. 15, 2002) ("The individual who supervised visitation consistently commented on the absence of positive interaction between [the mother] and the children."). This is not such a case. The supervising CFI worker was not shy to criticize both parents for poor interactions during visitations, but she also praised the parents for their positive interactions, growth as parents, and effective redirections.

In a general sense, the juvenile court appears in its analysis to have relied upon the parents' actions prior to the relevant six-month period, which are improper considerations under the significant-and-meaningful-contact element of section 232.116(1)(e)(3). On our de novo review, we have limited our consideration to the applicable statutory period, and we find reasonable efforts from both parents to maintain significant and meaningful contact with the children during the statutory period and to comply with DHS recommendations.

### IV. Conclusion

It is clear both parents have serious obstacles in their lives preventing reunification at this time, and the children are struggling with very serious behavioral and health issues. But it cannot be said that the parents have not maintained significant and meaningful contact with their children during the

relevant six-month period.  Both parents exhibited genuine efforts to remain part of their children's lives and to improve their parenting and life skills.  Iowa Code section 232.116(1)(e) is not a proper basis for terminating the parents' rights to their children.

Because we find the juvenile court's reliance on section 232.116(1)(e) improper, we do not address whether termination is in the children's best interests or the mother's request for six additional months to achieve compliance. We reverse the juvenile court's termination order as to both parents' rights to all five children.

**REVERSED ON BOTH APPEALS.**