# IN THE COURT OF APPEALS OF IOWA

No. 17-1796
Filed January 10, 2018

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**P.J., Mother,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

　　A mother appeals the termination of her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

　　Ashley M. Sparks of Cooper, Goedicke, Reimer & Reese, P.C., West Des Moines, for appellant mother.

　　Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

　　Charles E. Isaacson, Des Moines, guardian ad litem for minor child.

　　Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

This appeal arises out of a proceeding to terminate parental rights filed pursuant to Iowa Code chapter 232 (2017). Paula appeals from an order terminating her parental rights in her child A.J. (born 2008) pursuant to Iowa Code section 232.116(1)(f). On appeal, Paula challenges the sufficiency of the evidence supporting the statutory ground authorizing the termination of her parental rights and whether termination of the parent-child relationship is in the best interest of the child.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (setting forth the statutory framework).

We first address the challenge to the sufficiency of the evidence. Paula contends there is insufficient evidence supporting the fourth element under section 232.116(1)(f)—that "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(f)(4). We have interpreted this to mean the State must prove by "clear and convincing evidence the child[] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

The family came to the attention of the Iowa Department of Human Services (IDHS) in August 2016. At that time, law enforcement was called to the home.

Upon responding to the call, the officers found the home in a condition unsafe for the child. The apartment was so cluttered it was difficult to walk. The toilet was broken and filled with sewage. There were pills lying loose on the floor. The police found a loaded AR-15 semiautomatic rifle in an unsecured location accessible to the child. IDHS had concerns for the safety of the child due to domestic violence in the home. Paula's paramour resided in the home with Paula and A.J. The paramour was a felon. A.J. reported the paramour frequently beat Paula. A.J. also told IDHS the paramour had pointed the loaded AR-15 at her and told her "you will get what [your] mom's getting" after abusing her mother. IDHS also had concerns about Paula's mental health and possible substance abuse. Paula was arrested for child endangerment, and A.J. was removed from the home.

On de novo review, we find the State proved by clear and convincing evidence the statutory ground authorizing termination of Paula's parental rights. From the time of removal the department provided the mother with a number of services meant to address the causes giving rise to removal, but the mother was not responsive to the services and failed to address the issues creating an appreciable risk of adjudicatory harm to the child.

The mother has not maintained safe and appropriate housing for the child. Throughout the majority of this proceeding, Paula lacked any stable housing, alternating between living with friends and homelessness. *See, e.g., In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (stating inappropriate housing and inconsistent employment "reflect[ed] [a mother's] prior pattern of irresponsibility and lack of planning when it comes to her children"); *In re M.C.*, No. 17-1184, 2017 WL 4315079, at *2 (Iowa Ct. App. Sept. 27, 2017) (noting the lack of safe and

appropriate housing was a "significant detriment in [the parent's] reunification efforts"); *In re R.C.*, No. 03-1134, 2003 WL 22092677, at *2 (Iowa Ct. App. Sept. 10, 2003) (finding, among other factors, a father's "history of unstable housing and employment" provided "evidence beyond a reasonable doubt" that the child could not be placed in his care).

The mother also has a long history of substance abuse, including methamphetamine abuse. Two months after the department of human services intervened with the family, Paula tested positive for methamphetamine. The drug test was conducted as part of Paula's supervision while on probation for a theft offense. After testing positive for methamphetamine, Paula admitted to using methamphetamine for twelve years, but she claimed she had been clean for seven years and someone must have slipped the drug in her drink at a party. Paula's denial is not credible. Over the life of the case, Paula was discharged unsuccessfully from substance-abuse treatment twice for failure to comply with treatment rules. She never completed treatment. A long history of unaddressed substance abuse militates in favor of termination of a parent's rights. *See, e.g., In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

Paula has been diagnosed with bipolar disorder, among other things. She only sporadically attended mental-health treatment. She refused to sign a release

to allow for verification of what treatment, if any, she received. The concerns regarding Paula's unaddressed mental-health needs, and the risks posed to the child, are not speculative. As noted above, the child was found in squalid conditions. Throughout the case, the mother engaged in harassing behavior towards A.J.'s therapist, doctors, and foster family. She refused to sign a medical release to allow the child's foster family to seek needed medical treatment for the child, posing a risk of harm to the child. Paula's untreated mental-health conditions pose a risk of harm to the child. *See, e.g., In re K.G.*, No. 17-0347, 2017 WL 2189768, at *1–2 (Iowa Ct. App. May 17, 2017) (considering untreated mental-health condition as one reason children could not be returned to mother's care); *In re H.B.*, No. 13-0441, 2013 WL 2146463, at *2–3 (Iowa Ct. App. May 15, 2013) (finding "[the mother] has not adequately addressed her mental health needs or the domestic violence and relationship issues" and concluding "grounds for termination exist under section 232.116(1)(f)").

Paula has also engaged in ongoing criminal behavior during this case, which interferes with her ability to provide consistent care for the child. When the case was initiated, Paula was on probation after being convicted of theft. She violated her probation when she tested positive for methamphetamine. She was arrested on several occasions during the pendency of this case for probation violations and new theft offenses. A parent's choice to engage in criminal conduct militates against maintaining the parent-child relationship. *See, e.g., In re W.J.*, No. 17-0991, 2017 WL 3525340, at *1 (Iowa Ct. App. Aug. 16, 2017) (affirming termination where, among other things, mother continued with "criminal behavior");

*In re E.N.*, No. 16-2135, 2017 WL 514405, at *2 (Iowa Ct. App. Feb. 8, 2017) (affirming termination where mother continued "to engage in criminal behavior").

Related to all of the above, the mother has a demonstrated history of making poor choices and lacking protective capacity for the child. *See A.M.*, 843 N.W.2d at 111; *P.L.*, 778 N.W.2d at 41. Paula allowed the child to live in squalid conditions with a known felon. Paula allowed the child access to medication and loaded firearms. Upon removal, Paula prevented the child from receiving necessary medical care while simultaneously lamenting A.J.'s poor health. Paula harassed A.J.'s doctors, therapist, service providers, and foster family, limiting the child's access to services. The case worker testified about Paula's inappropriate conversations with the child. The demonstrated lack of protective capacity creates an appreciable risk of adjudicatory harm to the child. *See A.M.*, 843 N.W.2d at 112. For all of the above-stated reasons, we find sufficient evidence to terminate Paula's rights pursuant to Iowa Code section 232.116(1)(f).

Paula argues termination was not in the best interest of A.J. The primary concern in a termination proceeding is the best interest of the child. *See In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). As a general rule, "'the needs of a child are promoted by termination of parental rights' if the grounds for termination of parental rights exist." *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (citation omitted). When considering best interest, we assess how "the parent's ability to provide [for] the needs of the child is affected by the parent's mental capacity or mental condition." *In re D.W.*, 791 N.W.2d 703, 708 (Iowa 2010). We also look to the parent's past performance to gauge their future ability to meet the child's long- and short-term needs. *In re A.B.*, 815 N.W.2d at 778. Paula's mental

health, unstable behavior, and uncertain ability to meet A.J.'s needs lead us to conclude termination is in the best interest of A.J.

Paula also argues the parent-child relationship should be preserved through Iowa Code section 232.116(3)(c). This provision provides the juvenile court need not terminate the parent-child relationship if termination of the relationship would be more detrimental to the child than preserving the relationship. We disagree with Paula's contention. First, we note "[t]he factors weighing against termination in section 232.116(3) are permissive, not mandatory." *D.S.*, 806 N.W.2d at 474–75. While a bond exists between Paula and A.J., maintenance of the relationship is not in the best interest of the child. As noted above, the child is at physical risk when in the mother's care. In addition, the mother causes the child great emotional distress due to the mother's attempts to manipulate the child and sabotage the child's relationships with others. We conclude there is no reason to exercise our discretion to preserve the parent-child relationship.

For these reasons, we affirm the termination of Paula's parental rights in A.J.

**AFFIRMED.**