# IN THE COURT OF APPEALS OF IOWA

No. 18-0909
Filed July 18, 2018

**IN THE INTEREST OF E.B.,**
**Minor Child,**

**D.B., Father,**
      Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A father appeals a juvenile court order terminating his parental rights.

**AFFIRMED.**

Barbara J. Westphal, Belmond, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Crystal L. Ely of McGuire Law Firm, Mason City, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

The father, Daniel, challenges the order terminating his legal relationship to his eight-year-old son, E.B. On appeal, Daniel asks for an additional six months to work toward reunification. Daniel also contends termination of his parental rights was not in his son's best interests and was unnecessary because E.B. remained with Carrie, the child's mother and Daniel's ex-wife. Given Daniel's history of drug use, mental-health mismanagement, lack of consistent housing, and domestic violence, we agree with the conclusions of the juvenile court and affirm the termination order.[1]

## I. Facts and Prior Proceedings

The Iowa Department of Human Services (DHS) removed E.B. from Daniel's care in August 2016 because of Daniel's ongoing substance abuse and because Daniel was arrested for allegedly assaulting Carrie in E.B.'s presence. Daniel and Carrie were married at the time of the alleged assault, but they have since divorced. In October, the juvenile court adjudicated the child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) (2016) and ordered the child remain in Carrie's custody. The juvenile court subsequently entered an order limiting Daniel's contact with E.B. to supervised visits. To achieve reunification, the court instructed Daniel to act appropriately during visits with E.B. and when

---

[1] We review child-welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's fact findings but give them weight, especially when witness credibility is a key consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). As the petitioning party, the State must offer clear and convincing proof, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

interacting with social workers, to follow recommendations for mental-health and substance-abuse treatment, to comply with drug testing, and to abide by the order prohibiting contact with Carrie. The DHS social worker assigned to the family's case saw Daniel make "little to no progress since the initiation of services."

In April 2018, the juvenile court held a hearing on the State's petition to terminate Daniel's parental rights. The State cited paragraphs (a), (e), and (f) of Iowa Code section 232.116(1) (2017) as grounds for termination. The court found clear and convincing evidence to terminate Daniel's parental rights under paragraphs (e) and (f). Daniel appeals.[2]

## II. Analysis

### A. Additional Six Months

Daniel argues an additional six months "would result in a significant change in circumstances" allowing him to reunify with E.B. The father contends he has made progress by attending weekly visitation, completing a substance-abuse evaluation, and a domestic-abuse class.

The juvenile court may enter an order extending permanency if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). But, "[a] parent does not have an unlimited amount of time in which to correct his or her deficiencies." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). Once statutory timelines have run, the child's best interests are promoted by

---

[2] Daniel does not challenge that statutory grounds existed for termination.

termination. *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992). Young children cannot wait indefinitely for stable parents. *D.W.*, 791 N.W.2d at 707.

The juvenile court has supervised E.B.'s family since August 2016. In that time, Daniel completed three separate substance-abuse evaluations but was unsuccessfully discharged from treatment each time due to lack of attendance. Daniel provided two positive drug screens since the initiation of services and failed to show up for testing nineteen times. Daniel admitted to his probation officer that he had been using methamphetamine, most recently in January 2018.

Daniel was incarcerated for nearly two months in the fall of 2017 on charges of harassment and possession of illegal drugs. Daniel also was jailed a short time for violating the no-contact order.

Daniel has been diagnosed with several mental-health conditions. He consistently participated in counseling services for a short time until the provider closed its office. Daniel testified he takes his prescription medication, but the DHS worker testified medication compliance had been an ongoing issue through the CINA case. Because Daniel did not regularly meet with a mental-health provider, the DHS could not verify whether he was taking his medication as recommended. In spite of his multiple diagnoses and history of drug abuse, Daniel downplays his need for counseling services.

Daniel has struggled to maintain adequate housing. At the time of the termination hearing, Daniel was living in a friend's basement. Since August 2016, Daniel also has stayed with his father, with his brother, in his truck, in a tent in a friend's backyard, and with various friends. Daniel has not taken advantage of assistance offered to him to find more permanent housing.

In the nearly two years the CINA case has been pending, Daniel has not been able to address his drug use, mental health, and housing challenges. The record shows Daniel does not take responsibility for his own actions and failures but chooses instead to blame Carrie and the DHS. Delaying permanency for E.B. is not appropriate under these circumstances.

## B.  Best Interests/Parent-Child Bond

Daniel also contends termination of his parental rights was not in E.B.'s best interests because they are bonded to each other. Our determination of best interests must track section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting court's use of an unstructured best-interests test). That provision focuses on the child's safety; the best placement for furthering long-term nurturing and growth; and physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2).

By his ongoing substance abuse, fluctuating housing arrangements, and threatening and violent behavior toward Carrie, Daniel has placed E.B. at risk of harm. Daniel has exposed E.B. to the parents' toxic relationship. The child has made substantial progress since the case started and is doing well living with Carrie. E.B. was aggressive and disobedient when the case started but now accepts his mother's authority without conflict and has better coping skills. The best placement for furthering long-term nurturing and growth is with Carrie. E.B.'s physical, mental, and emotional condition and needs are better served by terminating Daniel's parental rights.

The closeness of the parent-child relationship does not upend this best-interest conclusion. While Daniel shares a bond with his son, that bond was not

always healthy. Daniel has not been able to move past four hours of supervised contact per week. During most supervised visits, Daniel has interacted with his son in an appropriate and loving manner. But during some visits, social workers have to redirect the conversation when Daniel "tries to get information from [E.B.] regarding his mother, who she's seeing, what's going on in the house." The DHS worker also testified E.B.'s mental health is damaged by continued visitations where he is "seeing his father's moods escalate in two seconds from being calm to angry to crying." The record reveals no clear and convincing evidence that the termination will be detrimental to E.B. due to a close parent-child bond. *See* Iowa Code § 232.116(3)(c).

### C. Relative Custody

Lastly, Daniel argues his parental rights should not have been terminated because the child is in Carrie's care. *See* Iowa Code § 232.116(3)(a) ("The court need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child."). The factors in section 232.116(3) are permissive, and we find good reasons not to apply the relative-custody provision to prevent termination here. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). Daniel's history of domestic violence, repeated violations of the no-contact order, and threatening statements toward Carrie do not inspire confidence that Daniel could safely maintain a relationship with E.B. while the child is in Carrie's care. We agree with the juvenile court's decision not to use this factor to forgo termination of Daniel's parental rights.

**AFFIRMED.**