# IN THE COURT OF APPEALS OF IOWA

No. 24-1536
Filed December 18, 2024

**IN THE INTEREST OF R.W.,**
**Minor Child,**

**J.W., Father,**
    Appellant,

**L.E., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.

Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant father.

Sarah Wenke, Ottumwa, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Nicole C. Steddom of Heslinga, Dixon & Hite, Oskaloosa, attorney and guardian ad litem for minor child.

Considered by Badding, P.J., Chicchelly, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

Parents separately appeal the termination of their parental rights to R.W., born in 2021. They claim the district court erred in concluding the child could not safely be returned to their custody, termination is not in the child's best interests, and the parent-child bond should preclude termination. The mother also claims the court should have placed the child in a guardianship with the maternal grandmother in lieu of terminating her parental rights. Upon our review, we affirm.

## I.     *Background Facts and Proceedings*

In June 2022, R.W. was admitted to Blank Children's Hospital with a severe skull fracture and brain bleed. She was ten months old. The father—who was caring for the child at the time of the injuries—reported R.W. was playing in water, slipped, fell, and hit her head. Medical providers determined R.W.'s injuries were nonaccidental.[1] There were also concerns about domestic violence between the parents. The mother agreed to the child's placement with the maternal grandmother under a safety plan with the department of health and human services (HHS). The father would not agree to the child's placement with the grandmother, so HHS requested an ex parte removal order.

Initially, the mother planned to reside in the maternal grandmother's home with the child, and she sought a no-contact order against the father. The mother changed her mind a few days later, moved back into the family home with the father, and requested the no-contact order be dropped. R.W. was adjudicated a child in need of assistance and removed from the parents' custody.

---

[1] A subsequent child abuse assessment was founded relating to the father's physical abuse of the child.

The parents were directed to participate in mental-health services. The mother was already doing so. The father did not participate because "[h]e didn't think that he needed any mental-health services." The father's contact with the child was professionally supervised, but he refused to follow the advice of the visitation supervisors, maintaining "that they weren't going to tell him how to interact with his daughter." The father "still didn't believe that [HHS] needed to be involved."

The mother requested another no-contact order against the father in November. HHS believed the mother was making progress to distance herself from the father. The mother progressed to semi-supervised and overnight visits. In May 2023, HHS recommended the child be returned to the mother.

Approximately six weeks later, the parents were arrested for violating the no-contact order. HHS learned the mother had not been honest about her contact with the father and he had been staying in the family home. HHS explained to the mother "that continued contact with [the father]" and "providing [him] access" to the child "would be a concern" preventing her reunification with the child because the father was not cooperating in services. Despite this advice, the mother requested the no-contact order be dropped, and the father moved back into the home. The child was returned to the care of the maternal grandmother, where she has remained since.

In spring 2024, HHS also became concerned about marijuana use by the parents. The father completed a substance-use evaluation and stated he used marijuana "a couple times a week." But he refused to follow through with recommended treatment. The mother initially denied substance use, but after

several tests returned positive results, she acknowledged using. Her evaluation recommended enhanced outpatient treatment, which she began. The court entered a permanency order in April, observing the mother "has been participating in recommended services" but "continues to choose to be romantically involved with [the father]." The court found, "[R.W.] is only two years old. [The father]'s lack of participation in services, failure to acknowledge the abuse, and [the mother]'s lack of protective capacity are legitimate safety concerns, and barriers to reunification."

By July, HHS reported there had been "little progress" toward reunification. The father had moved from Ottumwa to live in Muscatine but "ended up in Des Moines." There, he was arrested for two separate charges and was incarcerated in Polk County and subsequently transferred to the Muscatine County jail where he remained at the time of the hearing. Meanwhile, the mother continued to maintain she had ended her relationship with the father and asked him to leave the home. However, HHS reported "there are concerns on if this happened as [the father] was still claiming they were still in a relationship until he moved to Des Moines." HHS reported the mother's "transparency and credibility" have been "a concern throughout the life of this case." The State petitioned for termination of parental rights.

A termination trial took place in August. By then, the child had been out of the parents' custody for all but six weeks of the past two years. At trial, the mother admitted the father was "verbally abusive" toward her and stated she had ended the relationship in May. Since he had been in jail , she had not answered his calls. She believed the father's rights should be terminated. She further believed she

could keep the child safe and requested the child be returned to her custody. The father testified he had been incarcerated since the first week of July but he could "be released within a couple of weeks." He stated he planned to "start" domestic violence classes after he was released, acknowledging it was "still a requirement that [he] need[ed] to do." He agreed he "had troubles controlling [his] anger in the past," but he believed he had "conquered" this issue. He requested additional time to work toward reunification and further opined, "I don't think [R.W.] should have ever been removed. There is lack of evidence that I—that me or [the mother] did anything."

HHS and the guardian ad litem recommended termination of parental rights. The court entered an order terminating both parents' rights pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (i) (2024). The parents separately appeal.

## II.    Analysis

We review termination-of-parental-rights proceedings de novo, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). The parents' appeals touch peripherally on each of these steps.

Although neither directly challenges the grounds for termination by subparagraph, both claim the court erred in concluding the child could not safely be returned to their custody.[2] *See* Iowa Code § 232.116(1)(h)(4) (requiring the

---

[2] The father also generally claims he "cooperated with all services."

State to show by clear and convincing evidence that the child could not be returned safely to the custody of either parent at the time of the termination hearing); *see also In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) (noting when juvenile court relies on more than one paragraph, we may affirm "on any ground supported by the record").

Relating to the father, aside from his incarceration, he took no responsibility for his abuse to R.W., which precipitated HHS's involvement with this family. *See In re H.H.*, No. 23-0146, 2023 WL 2909070, at *3 (Iowa Ct. App. Apr. 12, 2023) (noting "[a] parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children" (citation omitted)). Moreover, he did not obtain treatment to address his issues. *See id.* (observing a failure to take responsibility for wrongdoing may result in "failure to obtain treatment for his or her problems" (citation omitted)).

Turning to the mother, we observe she made strides in the months preceding the termination hearing. But the mother's progress coincided with the father's incarceration. The guardian ad litem opined, "We're not in a terribly different position than we have been since this case started." The HHS caseworker opined, "I have concerns that if [the father] were to show back up at her house when she's trying to set boundaries in place, she would not want to deal with that confrontation and allow things to kind of backslide to where they were before." Based on these and the other facts detailed above, we concur with the court's assessment the child could not be returned to the custody of either parent at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

Combining the second and third steps, the parents each claim termination is not in the child's best interests based on the bond they share with the child. The father also claims "he can provide a safe, stable, and nurturing home for the child and provide all necessities for the child." When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional condition and needs of the child." Iowa Code § 232.116(2). These factors all weigh in favor of termination. Turning our analysis to the bond exception in section 232.116(3)(c), *see In re L.L.*, No. 24-0431, 2024 WL 2045335, at *3 (Iowa Ct. App. May 8, 2024) (noting a best-interests claim based on emotional bonds "is more properly addressed under the third step"), we acknowledge the child shares a bond with the parents—the mother more so than the father. However, to avoid termination under section 232.116(3)(c), the "law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). Here, the guardian ad litem opined the child is "in a safe home with people that she loves and that love her and that have been protective of her and demonstrate that kind of capacity and have through the last two years, so I have no concerns about her future there." The guardian ad litem continued, "I do have concerns about her future if she were to be placed back with either of her parents today." Under these circumstances, neither parent has established termination of their rights will be detrimental to the child.

The mother also claims the court should have placed the child in a guardianship rather than ordering termination, "[s]ince the child is placed with a family member, it is likely that the child will continue to have a relationship with [the mother]." To establish a guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." Iowa Code § 232.104(4)(a). And, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). A guardianship does not provide the same level of stability and safety for a child as termination of parental rights and adoption because a guardianship is not permanent. *See In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018).

Here, the court found R.W. "is a child that needs permanency, and neither parent is in a position to provide [her] the permanency she needs and deserves. [R.W.] is bonded with her current caregiver, [the maternal grandmother], who is willing to adopt [her] if parental rights are terminated." But "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). The child's best interests always remain the first consideration. *In re L.M.F.*, 490 N.W.2d 66, 67 (Iowa Ct. App. 1992). As noted above, it is in the child's best interests to terminate parental rights. She is well-integrated into her grandmother's home, and her grandmother can meet her needs. A guardianship status lacks the permanency R.W. needs and deserves. *See In re A.C.*, No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023)

("The impermanent nature of guardianships denies children the security and stability that a permanent home provides.").

Having addressed the issues raised on each parent's appeals, we affirm the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**