**IN THE COURT OF APPEALS OF IOWA**

No. 17-1843
Filed January 24, 2018

**IN THE INTEREST OF K.G. and L.G.,
Minor Children,**

**K.G., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Ankeny, for appellant father.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Daniela Matasovic of Matasovic Law Firm, Ames, guardian ad litem for minor children.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

A father appeals from the order terminating his parental rights.[1] He claims the State did not present sufficient evidence to show he did not maintain a place of importance in the children's lives and termination is not in the children's best interests. We find there was sufficient evidence to terminate his parental rights, termination is in the children's best interests, and there are no impediments to termination. Accordingly, we affirm.

**I.     Background Facts and Proceedings**

L.G., born 2009, and K.G., born 2010, came to the attention of the Iowa Department of Human Services (DHS) in October 2016 after receiving reports that the parents were not tending to the children's basic needs, evidenced by such behavior as using methamphetamine in the presence of the children.

Both the mother and father had issues with substance abuse, domestic violence, and homelessness. Neither parent had stable housing as they were in jail during most of the pendency of the child-in-need-of-assistance (CINA) case and termination proceedings. On October 14, 2016, following the mother's arrest and upon learning the DHS was aware of the children's dire situation, the father voluntarily placed the children with his sister in Cedar Rapids. The father, who was on probation, was arrested on October 18 after police found methamphetamine in his golf bag and drug paraphernalia in his truck. The father subsequently stated his intent on having the children in his care upon his release, implying his sister was only a temporary placement for the children.

---

[1] The district court terminated the mother's rights, and she does not appeal.

On November 29, 2016, the children were adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2016). Following a dispositional hearing, the court confirmed the placement of the children with the father's sister and brother-in-law. When the father transitioned to a half-way house, he began to make progress in addressing his issues. However, the father did not follow through with the case permanency plan and was found passed out in his car under the influence of methamphetamine and alcohol in early 2017. According to the August 23, 2017 DHS report, the father was incarcerated on April 24, 2017, "for charges including possession of a firearm as a felon," with a tentative discharge date of December 18, 2020. Following a permanency review hearing on September 5, 2017, the juvenile court held:

> [T]he children have found a safe, stable, and secure placement with their aunt and uncle who are willing to provide permanency for them by way of adoption. It would be in the children's best interest to modify the permanency order to provide for termination of the biological parents' parental rights.

The State filed a petition to terminate the father's parental rights. Following an October 16 hearing on the matter, where the father—still incarcerated—was represented but did not participate, the court entered an order, terminating the father's rights under section 232.116(1)(e) (2017). The father appeals.

## II.  Standard of Review

The scope of review is de novo in termination cases. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). We give weight to the juvenile court's findings of fact, but we are not bound by them. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

### III. Sufficiency of the Evidence

The father asserts the evidence is not sufficient to support termination of his parental rights because the State failed to prove he "did not maintain a place of importance in the children's lives." Section 232.116(1)(e) provides the juvenile court may terminate parental rights as to a child if:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and *maintain a place of importance in the child's life*.

(Emphasis added.)

Since there is no dispute the children were adjudicated CINA and had been removed from the father's care for at least six consecutive months, the father only contests the third prong under paragraph (e).

The father claims he has maintained significant and meaningful contact with the children despite his incarceration. He claims he received no contact from the DHS after he was incarcerated in April 2017 and had no visitation with the children while incarcerated. The father maintains that this lack of communication with the DHS about visits while he was incarcerated should not be used against him.

However, the father "cannot use his incarceration as a justification for his lack of relationship with the child."  *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). "This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child."  *Id.*  The father's inability to maintain contact with his children is due to his own lifestyle choices that have resulted in his incarceration, principally his drug use.  This kind of inability to maintain meaningful contact is no legal excuse for failing to do so.  By failing to reach out to the DHS to set up visitation or other contact, the father did not continue to take an interest in the children or maintain a place of importance in the children's lives.

Moreover, the father's claim that he should have been provided with additional services and visitation while incarcerated is not preserved for our review. *See C.B.*, 611 N.W.2d at 493–94; *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (stating if a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings).  The father did not request additional services or make a complaint about the services offered, including visitation, at any stage of these proceedings.

Accordingly, we find the juvenile court properly terminated the father's rights under section 232.116(1)(e).

### IV.    Best Interests

The father next claims termination of his parental rights is not in his children's best interests.  He claims termination is the most restrictive outcome and better options were available, such as granting him an additional six months to

work towards reunification or allowing his sister and brother-in-law, where the children were placed, to serve as guardians of the children until his release. Section 232.116(2) requires us to give primary consideration to the children's safety, to the best placement for furthering the long-term nurturing and growth of the children, and to the physical, mental, and emotional condition and needs of the children. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The father voluntarily placed the children with his sister due to concerns about both parents' substance abuse issues and inability to care for the children. Since the November 29, 2016 adjudication, the children have remained with the father's sister and brother-in-law. The father has provided no evidence an additional six months would change his circumstances such that he would be in a position to care for the children. The caseworker testified that even if the father would be released soon from prison he would still need to have stable and safe housing; mental health and substance abuse evaluations; and follow through with recommendations, drug screens, supervised visits, and family therapy before he could be considered an appropriate placement. Thus, a six-month extension to work towards reunification is not appropriate. *See* Iowa Code § 232.104(2)(b); *In re J.B.L.*, 844 N.W.2d 703, 706 (Iowa Ct. App. 2014) (denying a six-month extension because clear and convincing evidence showed that parent would be unable to safely parent the child within six months of the termination hearing).

Furthermore, the children deserve permanency and stability. A guardianship is not a legally-preferable alternative to termination followed by adoption. *See In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992). The juvenile court found termination would be in the children's best interests, holding:

The children's safety is best ensured by termination of parental rights and continued placement of the children with paternal relatives, [the sister and brother-in-law], as the termination and placement will free the children from continued neglect, exposure to drug abuse and domestic violence as well as ongoing criminal activity by their biological parents.

Accordingly, we find the juvenile court properly determined termination was in the children's best interests.

## V.  Impediments to Termination

The father asserts he maintained a strong bond with the children that should preclude termination.  The father claims his act of voluntarily placing the children with their aunt and uncle shows his love for the children and the strength of his bond with them.  *See* Iowa Code § 232.116(3)(c).  The "exceptions" to termination are permissive and not mandatory.  *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).  "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship."  *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011).

Based on the circumstances, we conclude the parent-child bond should not preclude termination of the father's parental rights.  The caseworker testified the children, after years of turmoil, now have a routine and stability and are properly clothed, fed, and enrolled in school.  Accordingly, whatever bond the father claims to have with the children has not impaired their ability to thrive with their aunt and uncle and enjoy their childhood.  We affirm the decision of the district court to terminate the father's parental rights.

**VI.    Conclusion**

Because the State proved by clear and convincing evidence the father has not maintained significant and meaningful contact with the children during the previous six months and has made no reasonable efforts to resume care of the children despite being given the opportunity to do so, termination is in the best interests of the children, and there is no significant bond between the father and the children that would preclude termination, we affirm the district court's termination of the father's parental rights.

**AFFIRMED.**