**IN THE COURT OF APPEALS OF IOWA**

No. 21-0636
Filed July 21, 2021

**IN THE INTEREST OF L.M.,**
**Minor Child,**

**J.B., Father,**
        Appellant,

**N.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS**.

Bridget L. Goldbeck of Hughes & Trannel, P.C., Dubuque, for appellant father.

Taryn McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kristy Hefel, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J. and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father separately appeal the termination of their parental rights. The parents individually contend termination is not in the best interest of their child and an extension of time for reunification efforts should be granted. The mother also argues insufficient evidence exists in the record to terminate her parental rights on the grounds relied upon by the juvenile court. We conclude termination of the mother and father's parental rights is in the child's best interests, a six-month extension is not warranted for either parent, and clear and convincing evidence supports termination of the mother's parental rights on a statutory ground relied upon by the juvenile court. Accordingly, we affirm.

## I.     Background Facts and Proceedings

N.M., mother, and J.B., father, are the parents of L.M., born in 2020. L.M. initially came to the attention of the Iowa Department of Human Services (DHS) at birth in January 2020 when she was born with an illegal substance in her system. L.M., born at thirty-seven weeks gestation, weighed three pounds, fifteen ounces at birth. A founded child-abuse assessment for the presence of illegal drugs in the child was entered against the mother. Court involvement was not requested as part of the assessment.

L.M. again came to the attention of DHS after six-month-old L.M. presented in the emergency room for injuries the mother reported were received as a result of a fifteen-inch fall from a couch onto carpet. Following a medical examination and discovery of retinal hemorrhaging and a subdural hematoma, L.M. was transferred to the University of Iowa, where medical professionals determined the mother's explanation for the injuries could not account for the severity of the

injuries.  The University of Iowa reported L.M. had approximately fifty discreet hemorrhages in multiple layers of the left eye, with the most likely cause being trauma.  The exam also noted a traumatic subdural hemorrhage with a loss of consciousness in an unspecified duration.  L.M. was reported to have both acute and resolving brain bleeds.  A child-abuse assessment was founded for physical abuse, denial of critical care, and failure to provide proper supervision, listing the mother as the perpetrator of abuse.  Upon discharge from the hospital, L.M. remained in the custody of her mother pursuant to a safety plan that included the mother participating in family preservation services and full-time supervision of the mother's care of L.M. by a relative.

During the abuse assessment, the maternal grandmother reported that the mother had been consuming alcohol and Xanax, and because the maternal grandmother had to work, she left L.M. in the sole care of the baby's mother, contrary to the safety plan.  L.M. was removed from parental custody on July 31, 2020, due to the mother's failure to comply with the safety plan.  The mother tested positive for methamphetamine and marijuana on August 20.  L.M. was adjudicated a child-in-need-of-assistance (CINA) on September 21, pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2020).  The child has remained in the custody of DHS for relative placement since removal.[1]

Citing in part a lack of parental progress, the State filed a petition on February 23, 2021, requesting termination of the parents' rights.  At the termination

---

[1] This relative has care of another child of the mother, although it does not appear from the record before this court that the mother's parental rights have been terminated to this child, who was approximately nine years of age at the birth of L.M.

hearing on March 31, concerns remained regarding the mother's substance abuse and mental health. The mother continued to assert the cause of L.M.'s injuries was a roll-off from a couch. The father did not have an approved home study, had recently entered guilty pleas to substance-related charges, and was awaiting sentencing.

The court terminated both parents' rights under Iowa Code section 232.116(1)(h) and (*l*) (2021). The parents' request for an extension of time for reunification efforts was denied. The court found termination was in the child's best interest and declined to apply any expectations to the termination. Both the mother and father timely appealed.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove grounds for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. Sufficiency of the Evidence

The mother argues insufficient evidence exists to support termination of her parental rights on any grounds relied on by the juvenile court. When the court terminates parental rights on more than one statutory ground, we may affirm the district court's order on any ground we find supported by the record. *A.B.*, 815 N.W.2d at 774. For purposes of the mother's challenge, we focus on the

termination of the mother's rights pursuant to section 232.116(1)(h). "We consider whether the children could be returned to the parent's care at the time of the termination hearing." *In re M.M.*, No. 20-0058, 2020 WL 1310254, at *4 (Iowa Ct. App. Mar. 18, 2020) (citing *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016)).

Section 232.116(1)(h) requires: (1) that the child is three years old or younger; (2) has been adjudicated as a CINA; (3) the child has been removed from the parents' care for at least six of the last twelve months, or for the last six consecutive months with any trial period at home being less than thirty days; and (4) that there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time. L.M. was born in January 2020. She was approximately fourteen months old at the time of the termination hearing. She was adjudicated a CINA. At the time of the termination hearing, L.M. had been removed from parental custody for a period of eight months. She has not returned to parental custody since the initial removal.

The mother refused to acknowledge the source of L.M.'s injuries. This lack of recognition is sufficient to prevent a return of the child to the home. In addition to the problems surrounding L.M.'s severe injuries, the mother continued to struggle with substance-abuse and mental-health issues. She missed drug tests and appointments with her mental-health providers. She tested positive for illegal substances one month prior to the termination hearing. The mother's visits with L.M. have remained fully supervised. We, like the juvenile court, conclude there is clear and convincing evidence that L.M. could not be safely returned to her mother's care at the time of the termination hearing. Clear and convincing

evidence supports termination of the mother's rights pursuant to section 232.116(1)(h).

## IV.    Best Interests

Both parents claim termination of their parental rights was not in L.M.'s best interests. "When we consider whether parental rights should be terminated, we 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *M.W.*, 876 N.W.2d at 224 (quoting Iowa Code § 232.116(2)).

L.M. is bonded to her relative placement, where she has resided since removal. The University of Iowa Hospitals and Clinics follow L.M. for her condition due to her injuries. While she initially experienced seizures due to her injuries, at the most recent appointment in February 2021, L.M.'s physician recommended tapering off the seizure medication.[2] L.M. is behind in her gross motor skills development.

The father contends termination is not in L.M.'s best interest as there are no safety concerns regarding his parenting, his substance use does not interfere with his ability to parent the child, and he stays in contact with the child's placement and the provider. However, since removal, the father has seen L.M. twice a month for approximately two hours a month. The father's home study was not approved. Further, the father was awaiting sentencing at the time of the termination hearing

---

[2] The mother testified at the termination hearing that L.M. was no longer taking seizure medication.

on charges from 2018 and 2020.[3] He recently pled guilty to operating while intoxicated (OWI) (second offense) and resisting or obstructing an officer, arising out of a 2020 arrest. The felony eluding charge was dismissed as part of a plea agreement. The father also pled guilty in February 2021 to two charges incurred in 2018, consisting of a hit and run and operating while revoked, with sentencing to coincide with the hearing set concerning the 2020 charges.[4] Termination of the father's parental rights is in the L.M.'s best interests.

Termination of the mother's parental rights is in L.M.'s best interests for the same reasons detailed concerning the mother's sufficiency-of-the-evidence argument, including the mother's ongoing mental-health and substance-abuse issues, inability to parent the child on her own, and failure to acknowledge the source of L.M.'s injuries. Generally, if the grounds for termination have been proven, termination of parental rights is in the child's best interests. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992).

## V. Request for Six-Month Extension

Both parents argue the juvenile court should have granted additional time to work toward reunification. Under section 232.117(5), the court may order an extension of time under section 232.104(2)(b) as an alternative to terminating parental rights. A six-month extension may be granted based on a "determination that the need for removal of the child from the child's home will no longer exist at

---

[3] Sentencing was set for a date following the termination hearing.
[4] The mother informed L.M.'s medical providers she was involved in a violent relationship with the father. The record before of us is void of additional evidence of domestic abuse by the father toward the mother. The mother was arrested in late August 2020 for domestic abuse assault impeding airflow, with the alleged victim being the mother's sister. The record does not reflect a conviction.

the end of the additional six-month period." Iowa Code § 232.104(2)(b). We are further mindful that a child should not be asked to continuously wait for a stable biological parent, particularly when the child is of tender age. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010); *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011). "Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not 'await the wanderings of judicial process.'" *In re J.C.*, 857 N.W.2d 495, 502 (Iowa 2014).

The mother continues to struggle to address substance-abuse and mental-health concerns. After removal, she entered Heart of Iowa but left prior to completing the program. She was terminated from a shelter care placement due to testing positive for THC and breaking COVID-19 protocol. She is now residing in an apartment, which could not accommodate her daughter's placement. She has refused to accept any responsibility for her daughter's substantial injuries and has not wavered from her initial explanation that the injuries were received from rolling off the couch onto a carpeted floor.

The father in this case remains residing in Wisconsin, approximately three hours from his daughter's residence. Since removal, he has exercised ten separate visits, averaging two hours per visit. He does not have a driver's license due to his criminal convictions and must rely on others for transportation. His home study was not approved due to substance-abuse concerns in the home, related to both the father and his new girlfriend.[5] He recently pled guilty to OWI (second

---

[5] The father testified his girlfriend is required to have a breathalyzer in her vehicle "due to a traffic stop that she was apparently intoxicated for and blew clear over the legal limit." The father's girlfriend reported to the Interstate Compact on the

offense) and resisting or obstructing an officer. At the time of the termination hearing, he was awaiting sentencing.[6] Despite that arrest, he admitted to marijuana use just several months prior to the termination hearing and to the use of alcohol three weeks prior to the hearing.[7] He has a conviction history that involves a hit-and-run and operating while revoked.

Since removal, both the mother and father have been unable to make changes that would facilitate reunification. L.M. should not be forced to wait indefinitely for her parents to be able to care for her, "particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months." *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). We, like the juvenile court, are unable to determine the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period. An extension of time for either parent is not warranted. Accordingly, we affirm the juvenile court decision terminating the parental rights of L.M.'s mother and father.

**AFFIRMED ON BOTH APPEALS.**

---

Placement of Children evaluator that she was charged with an OWI and smokes THC once a month.

[6] A condition of the father's bond was "absolute sobriety."

[7] The father testified the type of marijuana he used prior to the termination hearing was legal in Wisconsin. As to his recent use of alcohol, he stated, "The alcohol, again, is like every—once every three weeks on the weekend, just who doesn't?"