# IN THE COURT OF APPEALS OF IOWA

No. 25-0546
Filed July 23, 2025

IN THE INTEREST OF D.B.,
Minor Child,

N.B., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.

A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Shannon L. Wallace of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals the termination of her parental rights to her one-year-old son, D.B.[1]  The mother challenges the statutory grounds for termination, claims termination is not in the child's best interests, and asks us to apply permissive exceptions to preclude termination.  Upon our review, we affirm.

## I.    Background Facts and Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (the department) in October 2023, when D.B. tested positive for amphetamines and methamphetamine at birth.  The department implemented a safety plan with approved relatives caring for the child and supervising the mother's interactions with him.  The mother completed a substance-use evaluation but did not return for treatment.  Thereafter, the mother refused drug tests.  The child missed his first few well-child check-ups.  Meanwhile, the father was arrested and incarcerated for several domestic assaults on the mother.  In February 2024, the child was removed from the parents' custody for relative placement with the maternal grandparents.  He was adjudicated in need of assistance in April.[2]

A dispositional hearing took place in May.  The court observed the mother had participated in visits with the child.  However, the guardian ad litem noted concern about the mother having unsupervised contact with the child in the grandparents' home due to the mother's substance use, as she had recently tested positive for methamphetamine.  The court found the mother "has not engaged in any services directed to address the concerns which led to removal[,] [p]articularly

---

[1] The father's parental rights were also terminated.  He does not appeal.
[2] The mother stipulated to the child's continued removal and adjudication.

as it relates to substance use," and found she "needs to demonstrate significantly more engagement in [the department's] recommendations to show her commitment to working towards reunification," "includ[ing] being honest about where she's at regarding her substance use and struggles generally."

A permanency hearing took place in August. The court learned the mother had missed several drug screens in June and July. And although she had a sweat patch applied in July, she did not return to the facility to have it removed. The court "presume[d] all of them would have been positive." The court also noted the mother had not engaged in services designed to address domestic violence, which the court found "continues to be an issue" given the father's arrest in June for perpetrating another domestic assault against the mother. The State petitioned for termination of parental rights.

The termination hearing took place in February 2025.[3] By then, the child was fifteen months old and had been out of the parents' custody for the past year. At trial, the mother testified she had used methamphetamine "one time" "right before giving birth." She stated she also made "a poor decision" to complete the sweat patch that was positive for methamphetamine. She acknowledged that she had not completed any other drug screens in this case,[4] except for the sweat patch

---

[3] The hearing was originally scheduled for November, but it was continued to January because the mother's attorney withdrew at the start of the hearing. The hearing was continued again because the mother was in the hospital following an emergency C-section for another child.

[4] The mother acknowledged she had tested positive for amphetamines and methamphetamine at the time of her most recent childbirth. The mother denied using drugs, stating instead that she "took five different kinds of heartburn medication," which a nurse told her "gives false positives for meth and amphetamines."

in July that was not submitted properly. She testified she refused to complete any other drug screens because she knew other people "who are in my situation who have continued to be undermined by these patches and said that there's a huge issue . . . of giving either correct positives or not" and because the prosecutor and caseworker "had made some prejudicial statements." She also reported she was "allergic to Latex" so she could not test. The mother agreed she was asked to provide a drug screen "yesterday," but she did not "have time." Yet she maintained if she provided a drug screen "today," it would be "[c]lean." When asked later in the hearing, she refused to test.

The department and the guardian ad litem recommended termination of parental rights. The court entered an order terminating the mother's rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2024). The mother appeals.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home, *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). We give weight to, but are not bound by, the district court's fact findings. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III.     Analysis

In reviewing termination-of-parental-rights proceedings, we ask whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa

2022); *see also* Iowa Code § 232.116(1)–(3). The mother's appeal touches on each of these steps.

## A. Grounds for Termination

The mother's rights were terminated on multiple grounds, but we may affirm if any one of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (h), of which the mother "argue[s] that element number four of this section has not [been] met by the State."[5] To support her claim, the mother claims she "made progress throughout this case." At the termination hearing, she testified she could "[a]bsolutely" care for the child if he was returned to her "today."

However, the mother had not produced a drug screen that was negative for substances. She acknowledged it was her choice not to do drug screens, even though she was aware that showing her sobriety would be the "quickest way" to reunify with D.B. The department caseworker reported:

> [The mother] has minimally engaged in the recommended services to address the safety concerns relating [to] her substance abuse, mental health and domestic violence. Recently, she started abuse treatment, but due to her self-report was only recommended for a 1.0 level of care despite her long history throughout this case of behavioral indicators. She has not provided drug screens for the Department or her provider since the Permanency Hearing, despite being adequately informed that a drug screen not taken is considered positive. [The mother] started attending therapy . . . . However, both services were not started until the Permanency Hearing. [The mother] still denies her substance use and the dangers associated with it, claiming she only used once when pregnant and once when

---

[5] We note, however, that the mother does not claim the court erred in concluding the child could not be safely returned to her custody. *See* Iowa Code § 232.116(1)(h)(4) (requiring the State to show by clear and convincing evidence that the child could not be returned safely to the custody of either parent at the time of the termination hearing). Despite this omission, which is arguably crucial to her claim, we elect to address its merits.

she had on the last patch. [The mother] has been attending her interactions with [D.B.], but she has not been addressing the safety concerns for her substance abuse and mental health and her understanding of the domestic violence dynamic in her relationship with [the father] remains largely unaddressed.

Based on these and the other facts detailed above, we concur with the court's assessment that the child could not be safely returned to the mother's custody at the time of the termination hearing. *See In re R.G.*, No. 25-0530, 2025 WL 1704721, at *3 (Iowa Ct. App. June 18, 2025) (noting the child could not be safely returned to the father's custody "[b]ecause the father is not addressing his substance-use issues, is not compliant with drug testing, and his home is not appropriate for [the child]"). Iowa Code section 232.116(1)(h) was satisfied.

To the extent the mother also argues she would be in a position to have the child returned to her if given the additional six months to do so, we disagree. The mother had done little during the past year to show the ability to safely parent the child after an additional six months. *See id.* at *4. As the department caseworker reported:

> The Department does not believe that reunification is possible today or anytime within the foreseeable future. [D.B.] has been out of his parent's care for nine of his twelve months of life, and he deserves to have permanency. [D.B.] is so young and has experienced so much instability in his short life. Prior to becoming court involved, the Department offered intensive eligible services that the parents struggled to engage with and were not open to services. The large concern for the lack of engagement in services and communication by the parents remains. [D.B.] needs a safe home, free from substances with safe and sober caretakers. This child deserves a permanent plan that will be safe and long term. There has been little to no progress thus far in the case, and based on the lack of engagement and openness, it's not reasonably likely that more time will yield a different result.

In short, the same concerns prompting the department's involvement with this family remained unresolved at the time of the termination hearing. An extension of time was unwarranted. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) ("In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension.").

**B.      Best Interests**

The mother also claims termination is not in the child's best interests. When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional conditions and needs of the child." Iowa Code § 232.116(2). Here, these factors all weigh in favor of termination.

The mother has minimally engaged in recommended services, and her methamphetamine use remains unresolved. D.B. has been in his current placement for the past year, where he is reported to be healthy and safe. *See J.E.,* 723 N.W.2d at 802 (Cady, J., concurring specially) (describing the child's safety as the defining element of the best-interest analysis). Meanwhile, the mother's visits remain fully supervised and caseworkers noted concerns about the mother exhibiting behavioral indicators of drug use. We conclude termination is in the child's best interests.

**C.      Permissive Exceptions**

The mother also claims we should apply permissive exceptions contained in Iowa Code section 232.116(3)(a) and (c) to preclude termination. It is the

mother's burden to prove an exception should be applied, and the exceptions are permissive, not mandatory. *A.S.*, 906 N.W.2d at 475–76.

The exception in section 232.116(3)(a) allows us to forgo termination if "[a] relative has legal custody of the child." But custody of the child remained with the department through the termination hearing. This exception is therefore inapplicable.[6]

The mother also points to the exception in section 232.116(3)(c), which gives us discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." The mother claims "[t]he child knows and has a significant bond with" her. The family-centered services specialist agreed the mother has a "good relationship" with the child. Yet,

---

[6] The mother conflates her permissive-exception argument with an argument concerning a guardianship. To the extent the mother requests a guardianship with the relative placement, we determine that a guardianship is not an appropriate permanency option for D.B. The mother points out that "[a]t the time of trial, the minor child was residing with his maternal grandfather" and claims the court "could have granted guardianship of the child to . . . the grandfather." To establish a guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." Iowa Code § 232.104(4)(a). However, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). Despite the mother's claim that a guardianship with the maternal grandfather "would have provided permanency and safety for the child, at a minimum," a guardianship does not provide the same level of stability and safety for a child as termination of parental rights and adoption because a guardianship is not permanent. *See A.S.*, 906 N.W.2d at 478. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). The child's best interests always remain the first consideration. *In re L.M.F.*, 490 N.W.2d 66, 67 (Iowa Ct. App. 1992). Under these circumstances, a guardianship status lacks the permanency D.B. needs and deserves. *See In re A.C.*, No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023) ("The impermanent nature of guardianships denies children the security and stability that a permanent home provides.").

the specialist also noted the mother was "late for almost every visit," which were ninety minutes long.  And the mother has not carried her burden by clear and convincing evidence to prove that termination will be detrimental to the child due to this parent-child bond.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**